216 S.W.3d 58 (2007)
In the Interest of M.K.R., a Minor Child.
No. 2-05-240-CV.
Court of Appeals of Texas, Fort Worth.
January 25, 2007.
*60 Griffith, Jay, Michael & Moore, L.L.P., and Thomas M. Michel, Fort Worth, for Appellant.
The King Firm and Heather L. King, Fort Worth, for Appellee.
Panel B: HOLMAN, WALKER, and McCOY, JJ.

OPINION
BOB McCOY, Justice.

I. Introduction
In five issues, appellant Charles Roberts complains of the trial court's judgment against him awarding $29,604.49 in child support arrearages and interest to his ex-wife. Because we hold that the trial court abused its discretion by entering an arrearage judgment against Roberts that included amounts barred by res judicata, we reverse and remand.

II. Background
This is the case of the two-bite arrearage. In March 1985, Roberts and appellee Mary Ann Sanderson were divorced, and Roberts was ordered to pay Sanderson $250 per month in child support for their son, M.K.R., until he reached his eighteenth birthday or became otherwise emancipated. The divorce decree specified that this child support was to be paid each month in two equal installments of $125 each, due on the 4th and 19th days of each month. Sanderson soon thereafter requested that Roberts pay her directly, and not through the child support office in Denton County, because she had moved to Tarrant County and was experiencing delays in receiving the payments from the Denton County office. In February 1991, Roberts was laid off from his job and did not return to work until September 1992; he reported less than $6000 in income for each of those two years.
*61 A. The First Payment Dispute
On November 12, 1993, Sanderson filed a single document titled "Motion to Transfer Venue, Motion for Contempt, and Motion to Modify Prior Order of the Court." In the motion for contempt portion of the document, Sanderson alleged that Roberts had failed to make child support payments from January 4, 1991, to October 4, 1993. On June 15, 1994, the associate judge made a recommendation regarding this motion in a "Report for Contempt," which was signed by the parties, their attorneys, and the associate judge; the report also contained the stamped signature of the district judge under the words "APPROVED AND SO ORDERED." The report grants an arrearage judgment to Sanderson for $5,825 and orders Roberts to make payments of $200 per month on this arrearage judgment in addition to his $250-per-month child support payments. The report also sentences Roberts to thirty days in jail for contempt but suspends the sentence for five years or until the arrearage judgment is paid, whichever comes first. The record shows no further proceedings in this matter,[1] and according to the docket sheet, the remainder of the pleading was dismissed for want of prosecution on July 25, 1995.
B. The Second Payment Dispute
Almost six years later, on June 1, 2001, Roberts filed a motion to modify, seeking custody of M.K.R. and modification of his child support obligations. Sanderson responded, in part, by filing a motion for enforcement on August 9, 2002, asserting that Roberts had failed to pay almost all child support payments due from September 1984 through June 1994, as well as other, intermittent payments from December 1996 through July 2002. Sanderson amended her motion for enforcement to request an arrearage judgment of $61,624.70, interest on the arrearage amounting to $36,132.89, costs, and attorney's fees. The court eventually entered an order on April 7, 2005, finding that the arrearage owed by Roberts was $29,604.49 "for the period January 4, 1985 through December 5, 2002, which includes accrued interest." The court also assessed attorney's fees against Roberts in the amount of $6,720. The trial court's November 16, 2005 Findings of Fact and Conclusions of Law, as well as its January 12, 2006 Additional Findings of Fact and Conclusions of Law, shed little light on how this number was calculated, which payments were made or missed, or how interest was calculated. Roberts now appeals.

III. Standard of Review
Issues regarding the payment of child support, including confirmation of child support arrearages as well as payment of attorney's fees, are reviewed under an abuse of discretion standard. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). Legal and factual sufficiency are factors that can be considered in determining whether an abuse of discretion has occurred. London v. London, 94 S.W.3d 139, 143-44 (Tex.App.-Houston [14th Dist.] 2002, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles; in other words, if it acts arbitrarily or unreasonably. Worford, 801 S.W.2d at 109.
Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. Anderson v. City of Seven Points, *62 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.1994). Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. Dominey v. Unknown Heirs and Legal Representatives of Lokomski, 172 S.W.3d 67, 71 (Tex. App.-Fort Worth 2005, no pet.); Rogers v. City of Fort Worth, 89 S.W.3d 265, 277 (Tex.App.-Fort Worth 2002, no pet.).
A legal sufficiency challenge may be sustained only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.1998), cert. denied, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 TEX. L.REV. 361, 362-63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.2005).
An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex), cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

IV. Res Judicata
In his first issue, Roberts asserts that the portion of Sanderson's claim for child support arrearage representing amounts incurred prior to the June 15, 1994 Report for Contempt is barred by res judicata.
A. The Doctrine of Res Judicata
Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. Puga v. Donna Fruit Co., 634 S.W.2d 677, 679 (Tex.1982). Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). Res judicata, or claims [sic] preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. Gracia v. RC Cola-7-Up Bottling Co., 667 S.W.2d 517, 519 (Tex.1984); Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 818 (Tex. 1984). Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit.
Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex.1992) (footnote omitted). Res judicata prevents splitting of lawsuits and reflects a policy to bring all litigation on a matter to an end, prevent vexatious litigation, maintain stability of *63 court decisions, promote judicial economy, and prevent double recovery. Id. at 629.
Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex.1996). Identity of parties is present here; the parties are the former spouses in both the 1993 and 2001 proceedings. Furthermore, Sanderson obviously could have claimed in the 1993 enforcement action any and all missed payments from the time of the institution of divorce proceedings in 1984 up to the time of the 1993 filing, including many of those that she asserted for the first time in the later 2001 enforcement action. Accordingly, the second two factors have been met in this appeal, and it is the first factor concerning finality of the judgment that warrants discussion.
B. The Finality of the Prior Judgment
An examination of Sanderson's 1994 filing, styled "Motion to Transfer Venue, Motion for Contempt, and Motion to Modify Prior Order of the Court," reveals that it is composed of three distinct pleadings in one document. The motion for contempt portion of the document sets forth specifically alleged missed payments by Roberts for 1991 through 1993 and is written in such a way as to convey that the enumerated missed payments, totaling $5,325, are the only payments that had been missed up to the date of filing pursuant to the March 6, 1985 Decree of Divorce.[2]
The Report for Contempt grants an "arrearage judgment," was signed by the parties, signed by their attorneys, "so ordered" and signed by the associate judge, and "approved and so ordered" and signed with the stamp of the district judge.[3] Under the law applicable at the time the report was signed, the findings and recommendations of the associate judge became the order of the referring court only on the referring court's signing an order conforming to the report. See Act of June 1, 1987, 70th Leg., R.S., ch. 674, § 3.02, sec. 54.013, 1987 Tex. Gen. Laws 2507, 2520; repealed by Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2(3), 1995 Tex. Gen. Laws 113, 282. The trial court made the following conclusions regarding this report:
21. The Report for Contempt was never adopted by the Trial Court by separate interim order or final order.
. . . .
24. The Report for Contempt was not a final order.
25. As a result of the dismissal of the litigation on July 25, 1995, the Report for Contempt was rendered a nullity, and the Decree of Divorce remained in full force and effect.

*64 26. The doctrine of Res Judicata is inapplicable to the Report for Contempt.
Roberts contends that the trial court abused its discretion by concluding that the Report for Contempt was not a final order and that res judicata did not apply to Sanderson's claim. We agree. Pursuant to the statutory requirements, the Report for Contempt became an order of the referring court when the referring court adopted the recommendation of the associate judge and signed the Report for Contempt under the notation "APPROVED AND SO ORDERED." See id.[4]
Sanderson argues that the report could not be a final order, despite the trial court's approval and signature, because the family code contemplates that the order is a separate document beyond the associate judge's report. See TEX. FAM. CODE ANN. § 201.007(a)(10) (Vernon Supp. 2006) (providing that an associate judge may "recommend an order to be rendered in a case"); In re Lausch, 177 S.W.3d 144, 151 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding) (holding that associate judge's report was not final because it required approval of the trial court and "contemplate[d] an order to follow"). However, Sanderson refers us to nothing in the family code or the government code that specifically requires a separate document per se; instead, what is required is the separate approval of the district court shown by the district court's signing an order conforming to the report. See Act of June 1, 1987, 70th Leg., R.S., ch. 674, § 3.02, sec. 54.013, 1987 Tex. Gen. Laws 2507, 2520 (repealed 1995). Here, it is evident on the face of the report that the district court judge approved and signed the associate judge's report as the order of the court; the signature of the district court judge appears on the report under the words "APPROVED AND SO ORDERED." Nothing in this document states that an additional order will follow.[5]
In addition, Sanderson argues that the report did not qualify as an enforcement order because it did not comply with the family code's specificity requirements for enforcement orders. See Act of May 25, 1993, 73rd Leg., R.S., ch. 798, § 13, 1993 Tex. Gen. Laws 3169, 3174, repealed by Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2(1), 1995 Tex. Gen. Laws 113, 282.[6] The purpose of the specificity *65 requirements is to notify the offender of how he has violated the provisions of the relevant order and how he can purge himself of contempt, to notify the sheriff so that he can carry out enforcement, and to provide sufficient information for an adequate review. See In re Levingston, 996 S.W.2d 936, 938 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding). Accordingly, while the lack of specificity may have been grounds for Roberts, as the losing party, to complain about the order's validity, Sanderson does not have standing to complain about the lack of specificity in the enforcement order. She was not personally aggrieved by the lack of specificity in the order, and any violation of due process resulting from the lack of specificity would affect Roberts's rights, not Sanderson's. See Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex.1996) ("A [party] has standing when it is personally aggrieved."); Brunson v. Woolsey, 63 S.W.3d 583, 587 (Tex. App.-Fort Worth 2001, no pet.) ("Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate.").
Contrary to the trial court's conclusion, the Report for Contempt was not rendered a nullity upon the trial court's dismissal of the remainder of Sanderson's action for want of prosecution on July 25, 1995. As stated above, Sanderson filed three motions in one document: a motion to transfer venue, a motion for contempt (that also requested an arrearage judgment), and a motion to modify. The trial court ruled on both the motion to transfer venue and the motion for contempt, but the record shows no further action taken on Sanderson's remaining motion to modify. Therefore, the trial court's dismissal for want of prosecution operated to extinguish the motion to modify-the only motion then pending before the court. It did not nullify the prior Report for Contempt, which was approved and signed as an order of the court a year earlier, because that report was a final order reducing Roberts's unpaid child support to judgment. See Act of May 25, 1993, 73rd Leg., R.S., ch. 798, § 14, sec. 14.41(a), 1993 Tex. Gen. Laws 3169, 3174, repealed by Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2(1), 1995 Tex. Gen. Laws 113, 282 (providing that "[a] periodic child support payment not timely made shall constitute a final judgment for the amount due and owing, including interest"); Beck v. Walker, 154 S.W.3d 895, 903 (Tex.App.-Dallas 2005, no pet.) (stating that the current version of this statute provides for the reduction of unpaid child support to judgment).[7]
We reject Sanderson's final argument that applying the res judicata doctrine to arrearage judgments would thwart the legislature's intent, as shown in section 157.005 of the family code, to serve the best interests of the child by granting large allowances for collection of unpaid child support. See TEX. FAM.CODE ANN. § 157.005(b) (Vernon Supp.2006) (providing that the trial court retains jurisdiction to render judgment for past-due child support for ten years after the support obligation terminates). While this statute does provide an extended limitations period for confirming child support arrearages, nothing *66 in the statute permits multiple enforcement actions and repeated litigation covering the same time period of missed payments. As with other final, unappealed judgments that are regular upon their face, res judicata applies to arrearage judgments. In re Nichols, 51 S.W.3d 303, 307 (Tex.App.-San Antonio 2000, no pet.) (citing Berry v. Berry, 786 S.W.2d 672, 673 (Tex.1990)). Sanderson has provided us with no authority for disregarding principles of res judicata to allow her a second bite at the apple for claims that she could have asserted at least eight years earlier.
By its terms, the Report for Contempt was a judgment on the amount of unpaid child support owed by Roberts as of June 15, 1994. It became a final order of the district court when the district court adopted the recommendation of the associate judge and signed the Report for Contempt under the notation "APPROVED AND SO ORDERED." Sanderson has cited no reason why she could not or should not have asserted her claims of missed payments from September 1984 through June 1994 in her original motion for contempt. We hold that the trial court abused its discretion by concluding that res judicata did not apply to the portion of Sanderson's claim for child support arrearage representing amounts incurred prior to the Report for Contempt and sustain Roberts's first issue.[8]

V. Abuse of Discretion in Arrearage Calculations
In his fourth issue, Roberts asserts that the trial court abused its discretion by entering an arrearage judgment against him that was not supported by sufficient evidence. The trial court found Roberts in arrears in the amount of $29,604.49, including accrued interest at six percent per annum, for the period January 4, 1985 through December 5, 2002. None of the court's findings of fact or conclusions of law reveals how this amount was calculated beyond the following explanation:
[T]he Court finds that the number of payments made of $250 per month as ordered in the 1985 decree of divorce, the credit for the periods in which Mr. Roberts had possession of the minor and the amounts set forth in the Tarrant County Child Support Office record of payment including interest computed at the rate of 6% per annum was $29,604.49.
We have concluded that res judicata applied to all amounts of past due child support prior to the June 15, 1994 Report for Contempt. Accordingly, we hold that the trial court abused its discretion by entering an arrearage judgment against Roberts that included any amounts barred by res judicata. See Worford, 801 S.W.2d at 109; London, 94 S.W.3d at 143-44. We sustain Roberts's fourth issue.

VI. Attorney's Fees
In his fifth issue, Roberts requests the court to reverse and render a take-nothing judgment against Sanderson but remand to the trial court to consider Roberts's request for attorney's fees. The Tarrant County child support payment history admitted into evidence at the hearing on Sanderson's motion reveals that, between June 15, 1994 and December 5, 2002, Roberts *67 missed sixteen-and-a-half months' worth of regular monthly child support payments totaling $4,125.00, but in the same time frame he actually made other lump sum and weekly payments totaling $5,205.02.[9] The copy of the Tarrant County child support payment history admitted at the hearing is evidence of the facts asserted in the payment record and is admissible to show whether payments were made. See TEX. FAM.CODE ANN. § 157.162 (Vernon 2002). Neither Sanderson nor Roberts disputes the payment history's record of his post-1994 payments. However, this payment history also reveals that Roberts was late with some installments of his child support obligations-some payments were not made until after the appropriate due dates (the 4th and 19th days of each month).
Because interest can accrue on late payments as well as missed payments, the trial court still must determine whether Sanderson is entitled to interest on any post-June 15, 1994 payments that Roberts paid late or missed, even if he had caught up on his delinquent child support payments by the date of the trial court's judgment. See TEX. FAM.CODE ANN. § 157.265(a) (Vernon Supp.2006) (providing that interest may accrue on delinquent child support from the date the support is delinquent until the date the support is paid or the arrearages are confirmed and reduced to judgment). Further, the trial court may order Roberts to pay Sanderson's attorney's fees if it finds that he failed to make child support payments when due. See id. § 157.167(a). This is true even if Roberts had paid off any child support arrearage by the time of the hearing on Sanderson's motion for enforcement. See Ex parte Boyle, 545 S.W.2d 25, 27 (Tex.Civ.App.-Houston [1st Dist.] 1977, orig. proceeding) (upholding attorney's fees award against father, who had paid off his child support arrearage by the time of the enforcement hearing, because he had been in default when served with notice of the hearing, and merely paying off the arrearage did not correct his prior failures to comply with the payment deadlines specified in the divorce decree). We overrule Roberts's fifth issue to the extent that it requests us to reverse and render a take-nothing judgment against Sanderson.[10]

VII. Conclusion
Having concluded that the trial court abused its discretion by failing to apply res judicata to Sanderson's claims of missed child support payments that were due before June 15, 1994, and by entering an arrearage judgment against Roberts that included amounts from claims barred by res judicata, we reverse the judgment of *68 the trial court and remand for further proceedings.
WALKER, J. concurs without opinion.
NOTES
[1] The trial court had previously granted Sanderson's motion to transfer venue to Tarrant County on January 7, 1994.
[2] In this motion, Sanderson created a chart of payments due, the amount paid, and a running arrearage total for the years 1991, 1992, and 1993. She prefaced this table with the statement, "Respondent has failed to make child support payments in the amounts and on the dates required by the order as shown:" Nothing in the motion indicates that this is an incomplete list or that Roberts had committed other violations of the divorce decree that Sanderson had chosen not to include in her motion for contempt.
[3] The use of a judge's stamped signature is permissible and valid. See In re Barber, 982 S.W.2d 364, 367 (Tex.1998) (orig.proceeding) ("[A] judge may sign a document by directing another person who is under the judge's immediate authority to affix the judge's signature using a rubber stamp.").
[4] Sanderson complains that there is no docket entry indicating the existence of a final order prior to the trial court's dismissal order. However, the mere absence of a docket entry regarding the approval of the Report for Contempt does not operate to invalidate the trial court's approval of the Report for Contempt as an order of the court. See Guyot v. Guyot, 3 S.W.3d 243, 246-48 (Tex.App.-Fort Worth 1999, no pet.) (recognizing that docket entries form no part of the record that may be considered on appeal because they are inherently unreliable).
[5] Sanderson also contends that the report was not a final order, despite the district court's approval and signature, because the signature was merely placed on the report pursuant to "common practice in Tarrant County Associate Courts . . . for the sake of preserving the Associate Judge's recommendation pending the preparation and entry of a typed order generally based upon the appropriate form recommended by the Texas Family Law Practice Manual." Sanderson gives us no authority for this assertion, and there is no evidence in the record regarding Tarrant County's "common practice" in 1994 regarding district judges' signatures on associate judges' reports.
[6] Specifically, an enforcement order must contain "findings setting out in ordinary and concise language the provisions of the final order, decree, or judgment for which enforcement was sought, the acts or omissions that are the subject of the order, the manner of noncompliance, and the relief awarded by the court." Id. If the enforcement order holds a party in contempt, it must include "findings setting out specifically and with particularity or incorporating by reference the provisions of the final order, decree, or judgment for which enforcement was sought and the date of each occasion on which the respondent failed to comply with the provision." Id.
[7] The language of the former version is nearly identical to that of the current, which provides that "[a] child support payment not timely made constitutes a final judgment for the amount due and owing, including interest." TEX. FAM.CODE ANN. § 157.261(a) (Vernon 2002).
[8] In light of our disposition of Roberts's first issue, we need not reach his second and third issues, in which he argues that the Report for Contempt is an enforceable Rule 11 agreement and that Sanderson is estopped from claiming an amount of past due payments in the 2001 proceeding that is different from the amount claimed in the 1993 enforcement action for the same time period. See TEX.R.APP.P. 47.1.
[9] After June 15, 1994, Roberts made all but one of his $250 per month child support payments through August 2001. He then made a payment of $658.19 in October 2001 but did not make any other payments until a year later, on October 28, 2002, when he began making weekly payments of $155.48 through the first week of December 2002 (for a total of six payments). In addition, on December 5, 2002, Roberts made two payments in the amounts of $2,250.00 and $1,363.95.
[10] We do not address the remainder of the issue, in which Roberts asks the court to remand the case for consideration of his attorney's fees, because he provides no discussion or citation to authority for this request and because he does not point us to anywhere in the record showing that he requested attorney's fees from the trial court. See Hall v. Stephenson, 919 S.W.2d 454, 466-67 (Tex. App.-Fort Worth 1996, writ denied) (holding that an appellate court is not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party's argument).