

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00277-CV

———————————————

IN THE INTEREST OF L.M. AND G.M., CHILDREN

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. D2020155

---

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant A.M. (Mother) appeals from the trial court's "Order in Suit to Modify Parent[–]Child Relationship" (the Order), in which the trial court found, among other things, that Appellee J.M. (Justin) was the presumed father of L.M. (Luke)[1] and that a parent–child relationship between Justin and Luke was established as a matter of law. In two issues on appeal, Mother contends that Justin lacks standing to bring the underlying suit affecting the parent–child relationship (SAPCR)—and, therefore, the trial court erred by adjudicating Justin as Luke's father—because (1) a prior termination order had adjudicated Z.R. (Zane) as Luke's father, and (2) Mother's prior divorce decree with Justin did not adjudicate him as Luke's father. We will affirm.

## II. BACKGROUND

Mother and Justin were married in May 2011. A month later, Mother gave birth to Luke. Mother maintains that Zane is Luke's biological father, and Justin admits that he is not Luke's biological father.

In September 2011—when Luke was approximately three months old—the County Court at Law of Anderson County, Texas, signed an "Order of Termination"

---

[1]To protect the anonymity of the children in this case, we use aliases to refer to them and to others associated with the case. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

pertaining to Zane and Luke (the Termination Order).[2] In the Termination Order, the court found that Zane had "voluntarily left [Luke] alone or in the possession of another not the parent and expressed an intent not to return" and had "executed an affidavit of waiver of interest that constitutes an unrevoked or irrevocable affidavit of relinquishment of parental rights." The court further found that "termination of the parent[–]child relationship, if any exists or could exist, between [Zane] and [Luke] is in the best interest of the child." The court ordered that "the parent[–]child relationship, if any exists or could exist, between [Zane] and [Luke] is terminated."[3]

Despite not being Luke's biological father, Justin continuously lived in the same household as Luke for more than the first two years of Luke's life, and Justin held himself out as Luke's father during that time. In August 2012, Mother gave birth to G.M. (Gracie).

In December 2017, Mother and Justin divorced.[4] In their "Agreed Final Decree of Divorce" (the Agreed Divorce Decree), Mother and Justin listed Gracie as

---

[2]The Termination Order lists Mother as the "Petitioner" and Zane as the "Respondent." It does not list Justin as a party to the proceeding.

[3]When asked about the Termination Order at a hearing in the underlying SAPCR, Justin acknowledged that "the biological father's rights were terminated."

[4]That divorce proceeding was held in the 324th District Court of Tarrant County, Texas.

a "child of the marriage," but they did not list Luke.[5]  In the decree, the court made a finding that "no other children of the marriage are expected."  Both Mother and Justin signed the Agreed Divorce Decree under the heading, "Approved and Consented to as to Both Form and Substance."

In August 2020, Justin filed an original SAPCR petition in the underlying case, requesting, among other things, that he and Mother be appointed as joint managing conservators of Luke.  Later that month, Justin requested that the trial court consolidate his SAPCR involving Luke with an ongoing SAPCR filed by Mother involving Gracie in which she had filed a petition to modify the parent–child relationship.  The trial court granted Justin's motion to consolidate.  Both Mother and Justin filed answers to each other's respective petitions, and Justin filed a counterpetition to modify the parent–child relationship, in which he requested, among other things, certain modifications of conservatorship, possession, and access to both Luke and Gracie.

In November 2020, Mother filed a motion to dismiss Justin's SAPCR, contending that Justin lacks standing because (1) "the termination of [the] parental rights of [Zane] as the biological father of [Luke] is an adjudication under Subchapter G [of Chapter 160 of the Texas Family Code], which rebuts the presumption that

---

[5]Justin testified that he had wanted to include Luke in the Agreed Divorce Decree but that he had been told by his counsel that Luke could not be added because he was not Luke's biological father.

[Justin] can be a presumed father" and (2) "the evidence shows that the Agreed Final Decree of Divorce signed by [Justin] also rebutted the presumption of paternity." Justin responded, arguing that he was Luke's presumed father pursuant to Section 160.204(a) of the Texas Family Code and that neither the Termination Order nor the Agreed Divorce Decree rebutted that presumption.

At the final hearing on the SAPCR in October 2021, Mother's counsel indicated that Mother was withdrawing her motion to dismiss, noting that Justin possessed standing.[6] At the conclusion of that hearing, the trial court stated that Justin was Luke's presumed father and that it would appoint Mother and Justin as joint managing conservators of both Luke and Gracie.

In January 2022, Justin filed a motion requesting that the trial court sign a final order in the SAPCR. That same month, the trial judge who had presided over the final hearing voluntarily recused himself from the case, and a new trial judge was appointed over the case. That new trial judge later signed the Order, in which he found, among other things, that Justin was Luke's presumed father and that a parent–child relationship between Justin and Luke was established as a matter of law. In that order, Justin and Mother were appointed as joint managing conservators of both Luke and Gracie.

---

[6]Standing, however, cannot be conferred by agreement, nor can it be waived, and it may be raised for the first time on appeal. *Watson v. City of Southlake*, 594 S.W.3d 506, 514 (Tex. App.—Fort Worth 2019, pet. denied); *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

5

Mother later filed a motion to vacate, modify, or reform the Order, in which she once again argued that Justin lacks standing to bring the SAPCR because of the Termination Order and the Agreed Divorce Decree. Following a hearing, the trial court signed an order denying Mother's motion. This appeal ensued.

## III. DISCUSSION

In both of her issues on appeal, Mother complains that the trial court erred by adjudicating Justin as Luke's father because Justin lacks standing to bring the underlying SAPCR.

### A. Standard of Review

Standing is a necessary component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993); *In re N.L.D.*, 344 S.W.3d 33, 37 n.4 (Tex. App.—Texarkana 2011, no pet.). Subject matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443; *N.L.D.*, 344 S.W.3d at 37. Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010); *N.L.D.*, 344 S.W.3d at 37.

### B. Applicable Law

A parent–child relationship can be established between a man and a child in the following ways: (1) an unrebutted presumption of the man's paternity of the child under Section 160.204; (2) an effective acknowledgment of paternity by the man under Subchapter D of Chapter 160 of the Texas Family Code, unless the

6

acknowledgment has been rescinded or successfully challenged; (3) an adjudication of the man's paternity; (4) the adoption of the child by the man; or (5) the man's consenting to assisted reproduction by his wife under Subchapter H of Chapter 160, which resulted in the birth of the child. Tex. Fam. Code Ann. § 160.201(b).

As to the first way of establishing a parent–child relationship—an unrebutted presumption of the man's paternity of the child under Section 160.204—a man is presumed to be the father of a child if "he is married to the mother of the child and the child is born during the marriage." *Id.* § 160.204(a)(1). A man is also presumed to be the father of a child if, "during the first two years of the child's life, he continuously resided in the household in which the child resided and he represented to others that the child was his own." *Id.* § 160.204(a)(5). If a presumption arises that a man is a child's father under Section 160.204, "that presumption is a particularly strong one, even if it so happens that the man is not the child's biological father." *In re J.C.*, 594 S.W.3d 466, 470 (Tex. App.—Fort Worth 2019, no pet.).

The presumption of paternity can be rebutted in only two circumstances: (1) when there is an adjudication of parentage under Subchapter G of Chapter 160 or (2) when the presumed father files a valid denial of paternity in conjunction with another person's filing of a valid acknowledgement of paternity. Tex. Fam. Code Ann. § 160.204(b); *J.C.*, 594 S.W.3d at 470. A proceeding to adjudicate parentage under Subchapter G of Chapter 160 must be commenced "not later than the fourth

7

anniversary of the date of the birth of the child."[7]  Tex. Fam. Code Ann. § 160.607(a).

"So long as the presumption stays unrebutted, the law deems the presumed father to be the child's father."  *J.C.*, 594 S.W.3d at 470; *see also* Tex. Fam. Code Ann. § 160.102(13) (defining "[p]resumed father" as "a man who, by operation of law under Section 160.204, is recognized as the father of a child until that status is rebutted or confirmed in a judicial proceeding").

## C.  Does the Termination Order deprive Justin of standing?

In her first issue, Mother argues that Justin lacks standing to bring his SAPCR because the Termination Order adjudicated Zane as Luke's father, thus rebutting any presumption of paternity that Justin had.

Here, Justin's presumption of paternity was established in one of two ways. First, it was established because Luke was born to Mother while she was married to Justin.  *See* Tex. Fam. Code Ann. § 160.204(a)(1).  Second, it was established because during the first two years of Luke's life, Justin continuously resided in the household in which Luke resided, and Justin represented to others that he was Luke's father.  *See id.* § 160.204(a)(5).  Thus, as Luke's presumed father, the law deems Justin as Luke's father until there has been either an adjudication of parentage under Subchapter G of Chapter 160 or Justin has filed a valid denial of paternity in conjunction with another

---

[7]Here, Justin testified that during the first four years of Luke's life, no paternity suit was ever brought claiming that someone else was Luke's father.

person's filing of a valid acknowledgement of paternity.  *See id.* § 160.204(b); *J.C.*, 594 S.W.3d at 470.

Mother argues that Justin's presumption of paternity has been rebutted, claiming that the Termination Order impliedly adjudicated Luke's parentage under Subchapter G of Chapter 160.  We disagree.  As a preliminary matter, we note that the Termination Order was made pursuant to Chapter 161 of the Texas Family Code, not Subchapter G of Chapter 160.[8]  Perhaps more importantly, the Termination Order did not make any adjudication as to Luke's parentage.  In this regard, the Termination Order specifically stated that "termination of the parent[–]child relationship, *if any exists or could exist*, between [Zane] and [Luke] is in the best interest of the child" and that "the parent[–]child relationship, *if any exists or could exist*, between [Zane] and [Luke] is terminated."[9]  [Emphasis added.]  Mother cites us to no authority holding that the presumption of paternity may be rebutted by a termination order containing

---

[8]Chapter 161 is titled "Termination of the Parent–Child Relationship," while Chapter 160 is titled "Uniform Parentage Act."  *See* Tex. Fam. Code Ann. § 160.101, 161.001.  Subchapter G of Chapter 160 is titled "Proceeding to Adjudicate Parentage."  *See id.* § 160.601.

[9]Subchapter G requires that the trial court "render an order adjudicating whether a man alleged or claiming to be the father is the parent of the child."  Tex. Fam. Code Ann. § 160.636.  Here, the Termination Order makes no such finding; instead, the Termination Order couches itself in qualifying "if any exists or could exist" language.

9

such qualifying language.[10] Because the Termination Order did not contain an adjudication of parentage under Subchapter G of Chapter 160, Justin does not lack standing to bring his SAPCR. *See* Tex. Fam. Code Ann. § 160.204(b); *J.C.*, 594 S.W.3d at 470 (stating that the presumption of paternity "can be rebutted in only [the] two circumstances" listed in Section 160.204(b)). We overrule Mother's first issue.[11]

---

[10]Mother cites *In re J.G.*, No. 02-21-00257-CV, 2022 WL 187983 (Tex. App.—Fort Worth Jan. 20, 2022, no pet.) (mem. op.) for the proposition that a termination order can constitute an adjudication of parentage. We find that case distinguishable because it did not address the presumption of paternity under Section 160.204—indeed, the father in that case was never married to the mother—and because there is no indication that the termination order in that case included the qualifying "if any exists or could exist" language that is present here. *See id.* at \*4–6; *see also* Tex. Fam. Code Ann. § 160.204.

[11]Mother devotes two sentences in her brief to argue that Justin's testimony that he was not Luke's biological father constitutes a quasi-admission that should act to deprive him of standing to file his SAPCR. But, as stated above, the presumption of paternity can exist "even if it so happens that the man is not the child's biological father." *J.C.*, 594 S.W.3d at 470. Moreover, Section 160.204(b) lists two circumstances in which the presumption of paternity can be rebutted—none of which is testimony from the presumed father indicating that he is not the biological father of the child. *See* Tex. Fam. Code Ann. § 160.204(b). Instead, as discussed above, there must be a *filing* of a valid denial of paternity by a presumed father *in conjunction with* another person's filing of a valid acknowledgement of paternity. *See id.* Because both must coexist but are not present here, Mother's argument in her reply brief—regarding Zane's affidavit acknowledging and relinquishing his rights in the termination suit—fails. In her reply brief, Mother also argues that the presumption of paternity and the two methods to rebut the presumption do not apply here because "[t]his case is not an initial proceeding" but is a "subsequent proceeding." Mother's argument fails to consider, however, that once established, the presumption of paternity continues until rebutted by the two methods set forth in Section 160.204(b). *See J.C.*, 594 S.W.3d at 470 ("So long as the presumption stays unrebutted, the law deems the presumed father to be the child's father."); *see also* Tex. Fam. Code Ann. § 160.102(13). Thus, regardless of whether this is an "initial proceeding" or a "subsequent proceeding," the presumption of paternity applies to our analysis.

## D. Does the Agreed Divorce Decree deprive Justin of standing?

In her second issue, Mother argues that Justin lacks standing to bring his SAPCR because the Agreed Divorce Decree did not adjudicate him as Luke's father. Mother argues that any presumption of paternity that Justin had with respect to Luke "evaporate[d] and disappeare[d]" once the Agreed Divorce Decree was entered without listing Luke as a child of the marriage. We disagree.

As stated above, Justin's presumption of paternity could only be rebutted by either an adjudication of parentage under Subchapter G of Chapter 160 or if Justin had filed a valid denial of paternity in conjunction with another person's filing of a valid acknowledgement of paternity. *See* Tex. Fam. Code Ann. § 160.204(b); *J.C.*, 594 S.W.3d at 470. Neither of those circumstances were presented by the Agreed Divorce Decree. Because Justin's presumption of paternity was not rebutted through the Agreed Divorce Decree, Justin does not lack standing to bring his SAPCR. *See* Tex. Fam. Code Ann. § 160.204(b); *In re S.T.*, 467 S.W.3d 720, 728–29 (Tex. App.— Fort Worth 2015, orig. proceeding) (holding that parties' attempt to adjudicate husband's nonpaternity by stipulation was "contrary to Section 160.204(b), which provides that a presumption of paternity may be rebutted in only two ways").[12]

---

[12]Mother attempts to minimize *S.T.* by noting that, in that case, the stipulation of nonpaternity was between only two of the three parties that were part of the action and that our holding was based on the rationale that a stipulation involving two parties does not bind a third party. *See* 467 S.W.3d at 728. While part of our holding in that case was based on the rationale that two parties to an action cannot bind a third party to an action by stipulation, we also made clear that the issue of rebutting

While Mother primarily frames her second issue around Justin's purported lack of standing, she also frames the issue on res-judicata principles, arguing that Justin "should be barred by res judicata from bringing a later suit to seek paternity of [a] child he failed to assert paternity [to] over three years ago."

Res judicata is an affirmative defense[13] that bars the relitigation of claims that have been finally adjudicated or related matters that could have been litigated in the prior action. *Peterson, Goldman & Villani, Inc. v. Ancor Holdings, LP*, 584 S.W.3d 556, 562–63 (Tex. App.—Fort Worth 2019, pet. denied). Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *In re M.K.R.*, 216 S.W.3d 58, 63 (Tex. App.—Fort Worth 2007, no pet.). When an issue regarding application of res judicata presents purely legal issues, we apply a de novo standard of review. *Berteen v. Hamdan*, No. 14-10-00247-CV,

---

the presumption of paternity could not be resolved by stipulation. *See id.* ("Husband and Wife cannot bind S.T., also a party to the underlying proceeding, to this stipulation, nor can they resolve this issue by stipulation."). Indeed, we noted that the attempt to adjudicate the husband's nonpaternity by stipulation was "contrary to Section 160.204(b)," and we held that the attempted stipulations "contravene[d] the statutory scheme." *Id.* at 728–29.

[13]While Mother did not raise res judicata in her answer, she did raise it in both her motion to dismiss and her motion to vacate, modify, or reform the Order. Thus, we will assume, without deciding, that Mother has properly preserved her res-judicata complaint.

12

2011 WL 3503322, at *2 (Tex. App.—Houston [14th Dist.] Aug. 11, 2011, no pet.) (mem. op.).

Mother contends that the Agreed Divorce Decree is a final judgment and that because Luke was not listed as a child of the marriage in the decree, any later attempt by him to adjudicate Luke's parentage is barred by res judicata. The El Paso Court of Appeals recently addressed a similar circumstance in which a child born during a lawful marriage was later not listed in the parties' divorce decree. *In re D.A.A.-B*, 657 S.W.3d 549 (Tex. App.—El Paso 2022, no pet.). In that appeal, the parties were in a legally recognized same-sex marriage during which one of the spouses conceived and bore a child through artificial insemination. *Id.* at 553. The parties later divorced, and their agreed divorce decree reflected that no child was born during the parties' marriage. *Id.* at 554. One of the spouses later filed a SAPCR petition, seeking the entry of a conservatorship order to determine custody and support issues pertaining to the child. *Id.* at 555. The other spouse moved to dismiss the SAPCR petition, arguing that the spouse who had filed it lacked standing. *Id.* at 556. The trial court granted the motion to dismiss, and the appeal followed. *Id.* at 557.

On appeal, the El Paso Court of Appeals addressed the issue of whether the spouse who brought the SAPCR petition should be estopped from bringing it based on her statement in the agreed divorce decree that no child was born during the parties' marriage. *Id.* at 570. After noting that estoppel had not been raised in the trial court, the El Paso Court of Appeals stated that it "also sense[d] a finality problem

13

with a divorce decree [in which] the parties failed to inform the trial court of the existence of a child born during the marriage." *Id.* After considering the issue, the court held that "a divorce decree that mistakenly states that no children were born during the marriage, or which fails to include all the children who were born during the marriage, cannot be considered final." *Id.* at 571 (first citing *Clark v. Clark*, 196 S.W.2d 343, 345 (Tex. App.—Texarkana 1946, no writ); then citing *Hawkins v. Hawkins*, 999 S.W.2d 171, 177 (Tex. App.—Austin 1999, no pet.); and then citing *Gonzalez v. Gonzalez*, 177 S.W.2d 328, 329, 331 (Tex. App.—El Paso 1943, no writ)). Accordingly, the El Paso court held that "the parties' divorce decree cannot be considered final for the purpose of giving conclusive effect on any issues pertaining to the undisclosed child," and it rejected any assertion that Chapter 160 of the Family Code required it "to treat the divorce decree as being a 'final adjudication' that no child was born during the parties' marriage." *Id.*

We find *D.A.A.-B* to be both persuasive and applicable. Just as the divorce decree there "[could not] be considered final for the purpose of giving conclusive effect on any issues pertaining to the undisclosed child," here, the Agreed Divorce Decree is not final for the purpose of giving conclusive effect to any issue pertaining to Luke. *See id.* Because it is not final for that purpose, Mother's res-judicata defense fails. *See Whitelock v. Stewart*, 661 S.W.3d 583, 604 (Tex. App.—El Paso 2023, pet. filed) (holding that res judicata "require[s] a final judgment to bar a subsequent proceeding"); *Bearden Investigative Agency, Inc. v. Melvin*, No. 2-02-078-CV, 2003 WL

14

194729, at *3 (Tex. App.—Fort Worth Jan. 30, 2003, no pet.) (mem. op.) ("The [agreed final judgment] failed to indicate that [appellees' daughter] was the sole or primary obligor on [appellant's] claim. Thus, the first required element of res judicata, a prior final judgment on the merits by a court of competent jurisdiction, fails since [appellant] never had any prior claim against [appellees] reduced to judgment."). We overrule Mother's second issue.

## IV. CONCLUSION

Having overruled Mother's two issues, we affirm the trial court's Order.

/s/ Dana Womack

Dana Womack
Justice

Delivered: June 8, 2023