

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-07-00079-CV
_____

## IN THE INTEREST OF P.D.D., A CHILD

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 93C1350-005

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

This is an appeal by Vickey Pace McAllister of an order denying her recovery of a claim against Joel Steven Pace for unpaid health insurance premiums and unpaid medical expenses incurred by McAllister for coverage of their child, P.D.D. The trial court ruled that the claims of McAllister were barred under the doctrine of res judicata.

**BACKGROUND OF CONTROVERSY**

McAllister and Pace were once husband and wife. A divorce was instituted by McAllister in 1993 and granted January 31, 1994; the divorce decree recited that no children were born to or adopted by the marriage and that none were expected. However, shortly after the divorce was granted, McAllister discovered herself to be pregnant and she filed an action to modify in a suit affecting the parent-child relationship. P.D.D., the child resulting from that pregnancy, was born on October 3, 1994, and an agreed order of paternity was entered on June 30, 1995, which found Pace to be the father and ordered him to pay child support and health insurance premiums for the child, with uninsured medical expenses to be shared by McAllister and Pace. This same order named McAllister managing conservator of the child with Pace as possessory conservator having standard specified rights of possession of the child.

At some point during 1995, McAllister and Pace re-established a joint household and lived together without marriage until the early part of 1999, when they once again separated. In 2003, McAllister moved to Arizona and remarried. In the Summer of 2004, McAllister and Pace

2

experienced some kind of disagreement concerning Pace's visitation with or possession of P.D.D. and amicable relations between Pace and McAllister evaporated. McAllister moved her residence without telling Pace of her whereabouts or the whereabouts of P.D.D. On November 16, 2004, Pace filed an action for contempt to compel enforcement of his custodial rights with P.D.D. As a result of the hearing on that motion, on March 28, 2005, McAllister was held in contempt of court and ordered to pay Pace's attorney's fees; in addition, Pace was granted compensatory possession days in addition to those regular days set out in the 1995 order. Writs of attachment and commitment for McAllister were issued on April 18, 2005, but these writs were never served on McAllister.[1]

On July 19, 2005, Pace filed a motion to modify the custody of P.D.D. McAllister responded with a request for modification of the child support obligation, retroactive to the date of filing of the request. A hearing on these issues was begun on August 30, 2005, but recessed before completion of all of the evidence, the trial court indicating that it would be resumed at a later time. Instead of a resumption of the hearing, an agreed order was entered on November 15, 2005; in the agreed order, the previous finding of McAllister's contempt of court and the portions of the previously-entered order granting Pace an award of attorney's fees were vacated; the orders regarding the conservatorship and possession of and access to P.D.D. were modified to a standard possessory order. The order concluded with the statement that "IT IS ORDERED that all relief requested in this

---

[1]The March 28, 2005, order and the attachment were not made a part of the record, but the nature of their content is drawn from recitations in the order from which appeal has been perfected and from the briefs of the parties.

case and not expressly granted is denied. All other terms of the prior orders not specifically modified in this order shall remain in full force and effect."

On March 13, 2006, McAllister filed an application for enforcement of the support order and for the return of items of personalty belonging to the child; specifically, McAllister sought to recover $400.00 in unpaid child support for the month of October 2005, $37,645.28 in reimbursement of health insurance premiums for a period beginning at the birth of the child and ending in 2003,[2] and Pace's half of uninsured medical expenditures, the return of a pink blanket and diamond necklace belonging to the child, and a judgment for attorney's fees incurred in bringing the action.[3] A hearing on this claim was conducted on October 12, 2006, after which the trial court received trial briefs by both McAllister and Pace. In its memorandum order dated February 19, 2007, the trial court included a finding that the agreed order entered November 15, 2005, barred McAllister's claims by res judicata. As a basis for this, the trial court found that the issues had been tried by consent in the hearing leading to the entry of that order and that the prior order was a monumentation of a settlement agreement between the parties which disposed of all claims between the parties prior to the entry of the agreed order. There were no findings of fact and conclusions of law requested and none were filed, but in recitations contained in the order, the trial court based its findings that a

[2]In 2003, the child became eligible for health insurance coverage at no cost through McAllister's current husband's insurance provider.

[3]The Texas Family Code treats health insurance as "additional child support." TEX. FAM. CODE ANN. § 154.182 (b–1) (Vernon Supp. 2007). Sometimes in this opinion, no distinction is made between unpaid health insurance premiums and unpaid child support.

settlement had occurred on the pleadings and testimony of the parties at the August 30, 2005, hearing.

In her appeal, McAllister maintains that: (1) Pace had never filed pleadings claiming either res judicata or settlement prior to the hearing. Because there were no pleadings filed upon which those affirmative defenses could have been raised, Pace was prohibited from doing so. (2) There was no trial by consent of the issue of the health insurance premiums or settlement in the prior hearing and resulting agreed order. (3) The trial court erred in ruling that there was a previous trial by consent of the issue of health insurance premium reimbursement.

**WERE AFFIRMATIVE DEFENSES RAISED BY PACE'S PLEADINGS?**

Rule 94 of the Texas Rules of Civil Procedure provides, in part, that "In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction . . ., payment, release, res judicata . . ., waiver, and any other matter constituting an avoidance or affirmative defense." TEX. R. CIV. P. 94. It has long been held that the purpose of Rule 94 is to give the opposing party notice of the defensive issues to be tried. *Land Title Co. of Dallas, Inc. v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980); *Hunter v. Carter*, 476 S.W.2d 41, 45 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); *Musso v. Cronley*, 422 S.W.2d 840, 841 (Tex. Civ. App.—Waco 1967, no writ).

An affirmative defense does not tend to rebut factual propositions asserted by a plaintiff, but rather it seeks to establish an independent reason why the plaintiff should not *recover. Gorman v.*

*Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991); *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

McAllister has argued that Pace failed to comply with the requirement of Rule 94 that the affirmative defenses of res judicata and settlement be specially pled.

Although Pace's brief makes no mention of this fact, the first full paragraph in his "First Amended Response to Motion for Enfocement [sic] and Motion to Enforce and Motion for Sanctions Under Tex. Civ. Prac. & Rem. Code § 10.002" recites in part:

> RESPONDENT would show that each of these alleged violations was fully addressed in a hearing on August 30, 2005, by this Court and disposed of by the order of this Court, signed by the Honorable Ralph Burgess on November 15, 2005, specifically the final paragraph of said order on page 15 which states, "IT IS ORDERED that all relief requested in this case and not expressly granted is denied."

In prescribing the degree of definiteness which pleadings contain, Rule 47 of the Texas Rules of Civil Procedure requires that they be particular enough as to "give fair notice of the claim involved." TEX. R. CIV. P. 47. A party need not plead a cause of action and its elements with specificity if it can be reasonably inferred from the pleadings. *McNeil v. Nabors Drilling USA, Inc.*, 36 S.W.3d 248, 250 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Although there is no mention of the words "barred," "claim preclusion," "issue preclusion," or "res judicata" within them, the pleadings filed by Pace were sufficient to place McAllister on notice of the intention of Pace to interpose the defense that the issues raised by McAllister for recovery of unpaid health insurance

6

premiums and medical expenses had been previously litigated in the previous hearing and were thus not capable of being heard once again.

As to whether there were pleadings which raised the issue of whether a settlement between the parties precluded recovery, it appears there were no such allegations contained in Pace's response. Therefore, irrespective of whether this issue would fall within the terminology of accord and satisfaction, waiver, or estoppel, there is simply no pleading conforming to the requirements of Rule 94. Accordingly, the issue of settlement (however characterized) was not raised in the pleadings.

**TRIAL BY CONSENT?**

However, although an affirmative defense has not been pleaded, it can still be considered if, at trial, it is tried by the consent of the parties. *See* TEX. R. CIV. P. 67; *see also Bell v. Meeks*, 725 S.W.2d 179, 179–80 (Tex. 1987). To determine whether an issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of <u>trial</u> of the issue. *Pickelner v. Adler*, 229 S.W.3d 516, 523 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Beck v. Walker*, 154 S.W.3d 895, 901 n.3 (Tex. App.—Dallas 2005, no pet.); *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Watts v. St. Mary's Hall, Inc.*, 662 S.W.2d 55, 58 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.).

Looking at the circumstances leading up to the hearing held on August 30, 2005, we find that McAllister had been previously found to be in contempt; a writ of attachment had been issued; and

Pace had been awarded attorney's fees against McAllister. Pace had brought an action to modify the conservatorship of the child and McAllister had responded by filing a motion to modify Pace's future child support obligation. There was no mention in any party's pleadings of unpaid child support due from Pace to McAllister nor any references to unpaid health insurance premiums to cover P.D.D., or health expenses which had been incurred by McAllister which had not been reimbursed to her by Pace.

During the hearing which ensued on that date,[4] there were mentions of the dispute concerning the health insurance premiums and the one month's unpaid child support:

(1)     In response to direct examination by his own attorney, Pace testified that after he and McAllister had separated in 1999, he had begun paying her $100.00 more than the court-ordered child support. He indicated that this additional sum was what he (who was familiar with insurance rates, having been an insurance agent) estimated to be the additional cost incurred by McAllister in adding P.D.D. to McAllister's employer-provided medical insurance coverage.

(2)     Again in response to direct examination by his attorney, Pace, who by agreement with McAllister, had been paying his child support directly to McAllister instead of in the fashion directed by the order of the court, testified that he had sent the check for the one month's child support which McAllister claimed that she had not received. He proffered the unopened envelope containing the

---

[4]A copy of the reporter's record of the August 30, 2005, proceeding was introduced into evidence at the hearing held on October 21, 2006, and was a part of the reporter's record of the second proceeding.

8

check which had been sent to McAllister's then last-known address in Arizona but returned by the postal service.

(3)     During cross-examination of Pace by McAllister's attorney, the following exchange occurred:

> Q.     Do you have any idea what the health insurance costs for [P.D.D.] is right now?
>
> A.     I did check the price of a major medical policy for a child her age, and it was somewhere in the $60.00, $70.00 range per month.
>
> Q.     If you'd like to give me that information --
>
> A.     Well, come see me.
>
> Q.     Would it surprise you if it was more closely around $200.00 per month?
>
> A.     I guess it would.

(4) During direct examination by her attorney, McAllister testified that although she had heard Pace testify that health insurance for P.D.D. could be obtained for about $60.00 per month, she had been unable to obtain it for that price. Rather, she stated that the cost to add P.D.D. to McAllister's health insurance policy was about $451.00 per month, applying no specific figures.

(5) During cross-examination of McAllister by Pace's attorney, McAllister testified that P.D.D.'s health insurance was covered at that time for no additional cost through McAllister's current husband's military retirement health insurance coverage.[5]

There was no testimony at that hearing concerning the time frame during which McAllister incurred the monthly charges for health insurance for P.D.D. nor the gross amount of money expended by McAllister for that purpose. There was also no testimony regarding any unpaid uninsured medical expenses incurred by McAllister for P.D.D.'s care. The agreed order entered by the trial court makes no specific reference to any then-outstanding monetary obligation.

The doctrine of trial by consent is not intended to establish a general rule of practice and should be applied with care; it should never be applied in a doubtful situation. *Stephanz*, 846 S.W.2d at 901. Trial by implied consent "applies only where it appears from the record that the issue was actually tried, although not pleaded." *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 281 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). "Rule 67 concerning trial by consent applies where it clearly appears from the record as a whole that the parties tried out a controverted issue and that the issue was fully developed. *See* TEX. R. CIV. P. 67; *Praeger v. Wilson*, 721 S.W.2d 597, 603

---

[5]The memorandum order from which appeal has been taken recites that McAllister testified that "the child's coverage was $451.00 per month through Tri-Care Health Insurance, which is federal health insurance that her husband provides through his military retirement. MOVANT also testified that the coverage costs her nothing and that there is no out-of-pocket cost for coverage under that policy." This is an incorrect reading of the record. The record shows that the monthly expenditure for health insurance sought by McAllister was incurred before P.D.D. became eligible for coverage under the Tri-Care Health Insurance program in 2003 and that there has been no claim made by McAllister for P.D.D.'s health insurance coverage since she became eligible.

(Tex. App.—Fort Worth 1986, writ ref'd n.r.e.)." *Fiduciary Mortgage Co. v. City Nat'l Bank of Irving*, 762 S.W.2d 196, 202 (Tex. App.—Dallas 1988, writ denied).

Plainly, although there was evidence about the issue of the nonpayment of health insurance premiums which arose during the hearing on August 30, 2005, it was raised primarily by Pace (who had not paid them) and not by McAllister (the person who later sought to recover them). The evidence concerning these insurance premiums was sketchy and incomplete at the 2005 hearing.

There was no trial of those issues at that time and it was error to determine that there was a trial by consent of them.

## WAS McALLISTER REQUIRED TO RAISE THOSE ISSUES?

In the order entered by the trial court, it is noted that under the transactional approach to the application of res judicata, "A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992). We observe that the bar of a claim by res judicata generally requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). *Ex parte Myers*, 68 S.W.3d 229, 232 (Tex. App.—Texarkana 2002, no pet.).

The question whether res judicata applies in a given instance is a mixed question of law and fact. *Myers*, 68 S.W.3d at 231; *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820 (Tex. App.—San Antonio 1996, no writ). When a matter involving both factual determinations and legal conclusions is decided by the trial court, Texas appellate courts generally use an abuse of discretion standard of review. *Myers*, 68 S.W.3d at 231–32. In applying this standard, we defer to the trial court's factual determinations as long as they are properly supported by the record, and we review its legal determinations de novo. *Morris*, 921 S.W.2d at 820.

At first blush, it may appear that under a rigid adherence to the transactional approach set out above, it was the responsibility of McAllister to raise the issue of the delinquency at the hearing in 2005. Her claims against Pace for unpaid health insurance premiums and medical expenses, through the exercise of diligence, could have been litigated at that time. All of the issues between these parties (both potential issues and those actually tried before the court) spring from their relationship as the parents of the child. The parties are the same and would require no third parties to be joined. However, the critical inquiry here as it pertains to the issue of res judicata centers upon what is the "same subject matter." In other words, is the issue of delinquent child support within the same subject matter as requests for modification of conservatorship or future child support obligations?

Chapter 155 of the Texas Family Code provides for continuing jurisdiction of family law matters. Nevertheless, in recognition that custody matters and support matters are intended to be independent of one another, the Legislature provided that "A court may not render an order that

conditions the right of a conservator to possession of or access to a child on the payment of child support." TEX. FAM. CODE ANN. § 153.001(b) (Vernon 2002). On the other hand, Section 157.003(a) of the Texas Family Code provides that "A party requesting enforcement *may* join in the same proceeding any claim and remedy provided for in this chapter, other provisions of this title, or other rules of law." TEX. FAM. CODE ANN. § 157.003(a) (Vernon 2002) (emphasis added). Although the law permits those kinds of actions to be prosecuted simultaneously, it does not require their joinder. From these, one can determine that it is the intention of the drafters of the Texas Family Code to treat the issues of current and future support, custody and visitation, and enforcement of orders as separate and definable questions.

In the case at bar, the active pleadings at the time of the 2005 hearing were (1) a motion to modify the conservatorship filed by Pace and (2) a motion to modify the future child support obligation filed by McAllister.

"A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action." *Barr*, 837 S.W.2d at 630. Looking at the evidence which would be pertinent to Pace's motion to modify the conservatorship and possession of P.D.D., it is clear that "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002 (Vernon 2002). The

13

party seeking modification of a conservatorship or custody order bears the burden of proving that there has been a material and substantial change in circumstances within the relevant time frame and that the modification is in the child's best interest. *Gardner v. Gardner*, 229 S.W.3d 747, 755–56 (Tex. App.—San Antonio 2007, no pet.).

McAllister's responding motion to modify the decade-old order establishing Pace's child support obligation involved other facts and other determinations. Chapter 154 of the Texas Family Code provides extensive direction for a court to determine the amount of child support which each support-paying parent is to pay; the primary thrust of the evidentiary hearing on a motion for modification of a child support obligation deals with the current income of the support-paying parent.

Both of the issues raised by the pleadings involve questions of the current circumstance of the parties and seek orders to dictate future conduct. In contrast, the issue of delinquent child support is not a question of the present circumstances of the parties or their future conduct but, rather, the content of prior orders for support and the degree of compliance with those orders the support-paying parent has observed in the past. The issue of support delinquencies is not the same subject matter as present and future issues concerning child support and custody.

This case is easily distinguishable from the circumstance in *In re M.K.R.*, 216 S.W.3d 58 (Tex. App.—Fort Worth 2007, no pet.). In that case, a judgment for delinquent child support payments was entered in 1993. In 2001, another judgment for child support was entered that

14

included delinquent payments which, although due before the 1993 order, were not mentioned in that order. In that circumstance, the court held that the claimant for child support was obligated to raise the question of all claims for delinquent child support which became due before the filing for enforcement of the child support obligation because it involved the same issue: unpaid child support. In the *M.K.R.* case, the 1993 order was determinative of the amount of child support delinquency existing at the date of the entry of the order finding the amount of delinquency. Here, there were different matters or issues which were involved. The 2005 hearing involved the issues of custody and future support; the thrust of McAllister's 2006 motion for enforcement involved a separate issue: unpaid child support. This Court has previously determined that even in closely-related suits between the same individuals regarding similar issues, if unlitigated claims are "not essentially connected" to the litigated claims, then they are not barred by res judicata. *In re J.G.W.*, 54 S.W.3d 826, 833 (Tex. App.—Texarkana 2001, no pet.) (tort claims stemming from the actions of the mother and her boyfriend in wrongfully taking the children and fleeing the state were not the same subject matter of the custody dispute).

Res judicata does not bar a litigant who did not assert an affirmative claim for relief in an earlier action from stating a claim in a later action that could have been filed as a cross-claim or counterclaim in the earlier action, unless the claim was compulsory in the earlier action. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). A claim is a compulsory counterclaim only if

15

(1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the court cannot acquire jurisdiction. A claim having all of these elements must be asserted in the initial action and cannot be asserted in later actions.

*Id.* (footnotes omitted); *see also* TEX. R. CIV. P. 97(a). McAllister's action for recovery of past-due child support was not a compulsory counterclaim to Pace's motion to modify the conservatorship of the child.

It was not required for McAllister to have litigated her claim for delinquent payments when responding to a motion to modify custody or when she sought to modify future child support lest she be barred by res judicata. In her circumstance, she responded to a motion to modify child custody with a motion to modify the child support obligation. Had she chosen to do so, she could have also made a claim for the unpaid health insurance premiums at the same time; nevertheless, since the subject matter was different and did not arise from the same transaction, not having chosen that option, her recovery on these issues was not thereafter barred.

Therefore, it was error to have determined that her claim for past-due child support was barred by res judicata.

**DID THE PRIOR AGREED ORDER REPRESENT A SETTLEMENT AGREEMENT WHICH BARRED RECOVERY?**

Inextricably bound to the issue of res judicata in this case is the issue of whether the previous agreed order (which pertained to the conservatorship and custodial matters regarding the child and

16

which exculpated McAllister of her penalties for contemptuous actions) represented a settlement agreement which barred McAllister from pursuing her claims for delinquent support obligations.

> It is settled law that the construction of an agreed judgment and a determination of the obligations imposed upon the parties are governed by the rules applicable to contracts generally. *Ex parte Jones*, 163 Tex. 513, 358 S.W.2d 370, 375 (1962); *Conner v. Bean*, 630 S.W.2d 697, 703 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980).

*Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519–20 (Tex. 1984).

An agreed judgment must be interpreted as if it were a contract between the parties and the interpretation is, accordingly, governed by the laws relating to contracts. *See McCray v. McCray*, 584 S.W.2d 279, 281 (Tex. 1979) (holding a child support agreement is largely governed by the rules relating to contracts); *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (1956) (holding a judgment by consent is contractual in nature); *Biaza v. Simon*, 879 S.W.2d 349, 355 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding an agreed or consent judgment is governed by the law of contracts); *see also Pate v. Pate*, 874 S.W.2d 186, 188 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("Agreed judgments, once rendered, are contracts between the parties that excuse error and operate to end all controversy between the parties.").

In reviewing the agreed judgment which was entered, it first alters the conservatorship of the child from a possessory/managing conservatorship relationship to a joint managing conservatorship; it then conforms the custodial and possessory rights of the child to the standard possession order

17

prescribed by statute; it vacates the previous orders finding McAllister in contempt and the award of attorney's fees against her in favor of Pace; it denies all relief requested and not granted; finally, it orders that all previous orders of the court not modified remain in force and effect. There is nothing ambiguous about this order which mandates its judicial construction; its terms are manifestly clear and determinable from the four corners of the instrument. Nothing in this order modifies the child support obligation; contrarily, by specifically not modifying these orders (and stating that prior orders not modified by it remain in force and effect), it ratifies the continued validity of those prior orders. It is completely silent as to anything relating to past-due support.

Where there is no ambiguity in a consent decree or judgment, a trial court is without authority to modify it. *See Pearcy v. Pearcy*, 884 S.W.2d 512, 514 (Tex. App.—San Antonio 1994, no writ).

In the 2006 hearing, McAllister made it plain that when she consented to the entry of the agreed order, it was not her intention to waive any right to reimbursement for past health insurance premiums. The closest which Pace came to expressing his belief that the agreed order exculpated him from the obligations which McAllister has pursued is in saying, "My understanding was in hammering that agreement and giving up everything that I did, and dropping the contempt questions, was that this was over with, that we were going to go about not bickering, being drug back into court, and doing what was best for [the child]." It appears that Pace's impression of things did not match the intentions of McAllister. A unilateral understanding is not an agreement. *Emeritus Corp. v. Highsmith*, 211 S.W.3d 321, 329 (Tex. App.—San Antonio 2006, pet. denied). Even if one were

18

to look at the entry of the agreed judgment under an implied-in-fact contract theory, that would require a meeting of the minds which the evidence at the hearing does not reveal. *Excess Underwriters at Lloyds v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 49 (Tex. 2008). Pace's unilateral understanding of the intention of the parties in entering the agreed order does not constitute grounds to alter it to incorporate things it excludes. The agreed order does not bar McAllister's claim.

The order of the trial court is reversed and the matter is remanded to the trial court for a determination of the issues raised in McAllister's motion for enforcement.


Bailey C. Moseley
Justice


Date Submitted:     May 14, 2008
Date Decided:       June 5, 2008