# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 96

APRIL TERM, A.D. 2015

*July 24, 2015*

THERESIA RENEE BREEN f/k/a
THERESIA RENEE BLACK,

Appellant
(Defendant),

v.                                                                S-14-0273

JAMIE LEE BLACK,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Appellant:*
Letitia Abromats of Philip E. Abromats, P.C., Greybull, Wyoming

*Representing Appellee:*
No appearance

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice**.

[¶1]     Theresia Renee Breen appeals from a district court order holding her in contempt for failure to reimburse her ex-husband Jamie Black for her share of medical expenses he incurred for their four minor daughters.  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## ISSUES

[¶2]     Breen raises four issues that we restate as follows:

I.       Did the district court err by awarding medical expenses incurred by Black prior to an August 8, 2012 hearing, but which he did not assert as a compulsory counterclaim in the action brought by Breen that led to that hearing?

II.      Did clear and convincing evidence support the district court's finding that Breen's failure to pay her share of the medical expenses was willful?

III.     Did the district court's alleged over-calculation of the amount Breen owed Black transform the civil contempt order into a punitive criminal contempt order?

IV.      Did the district court err in holding Breen in contempt for failing to communicate and cooperate with Black?

## FACTS

[¶3]     Breen and Black divorced in late 2008.  Breen received primary custody of the couple's four daughters, subject to Black's liberal visitation rights.  He was to pay support and provide medical insurance for the girls, and he was also to pay any deductibles required by the insurance policy.  The decree required Breen and Black to split any medical costs remaining after deductibles were paid and the insurer satisfied its obligations under the policy equally.  To implement that requirement, the decree required each of them to provide the other any documents showing charges by the girls' medical services providers, documents indicating that those charges had been submitted to the insurer, and proof of the amounts paid on those charges by both the insurer and the other party.

[¶4]     On March 2, 2012, Breen filed a "Motion for Judgment for Unpaid Child Support, Medical Expenses and Other Financial Obligations" and several attached exhibits.  She claimed that between January 12, 2010 and February 26, 2012, she paid for medical services for her daughters in addition to what their insurance company had paid, and that Black had not reimbursed her for his $4,608.45 share of those expenses.  Breen's

Exhibits D and E contained bills, statements, insurance documents, and a summary spreadsheet supporting that claim.

[¶5]    Black denied those allegations in his March 27 response to Breen's motion, then pled the following as an affirmative defense:

> Defendant pleads the affirmative defense that Defendant owes Plaintiff more in medical expenses of the minor children of the parties than is claimed in Paragraph 6 of the Motion for Unpaid Child Support, Medical Expenses and Other Financial Obligations of Defendant.

The district court held a hearing on Breen's motion on August 7 and 8, 2012.[1]

[¶6]    At the hearing, Black put on no evidence supporting a claim for Breen's failure to reimburse him for medical expenses he had paid. When the court questioned him about Breen's claim for reimbursement, Black responded:

> [T]here are a number of those bills that I may be responsible for, but there are also a number of those bills where I actually have the cancelled check from myself where I paid that bill. So I think there are some mathematical errors in the figures.

He and his attorney informed the court that Black had no objection to paying his half of any legitimate medical bills presented by Breen, and he eventually agreed to pay the entire $4,608.45 requested in her motion.

[¶7]    The district court entered a "Judgment and Order Establishing Child Support Arrearage, Penalties and Unpaid Medical Expenses" for that amount on October 15, 2012. Black did not appeal from that judgment and order.

[¶8]    On March 3, 2014, however, Black filed a motion and accompanying affidavit seeking to have Breen held in civil contempt for failing to pay her required half of an undisclosed amount of their daughters' medical expenses that were not paid under his health insurance policy. Breen did not include her response to that motion in the record transmitted to this Court, but her attorney set out her position during the show cause hearing on June 2, 2014.

---

[1] That matter was combined with a hearing on Black's ultimately successful petition for a change of custody. The order giving Black primary custody of his daughters is significant to the present appeal only to the extent that it left unchanged those provisions of the original divorce decree pertaining to the parties' obligation to split the costs of their daughters' medical care over and above what the insurance company paid.

[¶9]   Counsel argued that the August 8, 2012 hearing and the subsequent order on Breen's claim for reimbursement for her medical services expenditures disposed of any claims Black may have had for his similar expenditures in the period between the divorce decree and either that hearing or the latest expense included in Breen's claim.  That is, she suggested that Black's failure to raise such claims arising during that period in the earlier proceedings barred him from raising them later because they were res judicata.  Black's claim involved 160 medical bills, 75 of which related to services provided to his daughters more than a month before the August 2012 hearing.

[¶10] The district court ultimately rejected Breen's argument that the 2012 action "wrapped up" what Black owed her and what she owed him.  Without further explanation, the court determined "it only covered the one way expenditures that she had paid, that she deserved reimbursement and that is all that judgment covered."

[¶11]  The court also noted that Breen had not challenged the legitimacy of the medical bills introduced by Black or the fact that he had paid them, and that she conceded she was obligated to reimburse Black for half of those costs.  The court viewed the hearing as being primarily concerned with Breen's reason for not making payments against that obligation earlier.

[¶12]  In contrast to Breen's assertions that Black had not apprised her of what she owed, Black and his new wife testified at some length about their efforts to provide Breen with that information and to obtain some response from her as to her intentions.  They tried phone calls, e-mail, text messages, and regular and certified mail.  All were unavailing, and were met with either no response or responses that avoided the medical expenses issue entirely.  Her efforts at avoidance extended to filing allegedly false stalking charges against Black.

[¶13]  The court held Breen in contempt, noting that Black and his current spouse had attempted to provide Breen with copies of medical bills and proof of payment by Black and the insurance carrier.  It pointed out that Breen had evaded those efforts in contravention of provisions of the decree requiring the parties to cooperate with each other and to act in good faith.

[¶14]  The district court entered judgment against Breen for the $6,075.13 it determined she owed Black.  It also provided that she could purge herself of contempt by paying that amount in monthly installments of not less than $500 within twelve months of the hearing.

**DISCUSSION**

**Compulsory Counterclaims**

[¶15] Breen argues that Black should have been precluded from raising claims for medical expenses that accrued prior to the August 2012 hearing in his 2014 action, because they were compulsory counterclaims under W.R.C.P. 13(a) and, therefore, were barred by Black's failure to advance them at the earlier hearing.[2] Rule 13(a) provides in pertinent part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction[.]

W.R.C.P. 13(a). Although the rule does not expressly bar the subsequent litigation of a compulsory counterclaim[3] that was not raised in accordance with the rule, courts have historically applied the rule as erecting such a bar under the doctrines of res judicata, estoppel, or waiver. *Lane Co. v. Busch Development, Inc.*, 662 P.2d 419, 423-24 (Wyo. 1983).

[¶16] We do not find it necessary to analyze the potential intricacies of Rule 13 and their application to the highly variable pleadings used to collect overdue medical payments and other forms of support.[4] We believe the record convincingly demonstrates that Black's claim is barred by res judicata, or as it is also known, claim preclusion. *Erwin v. State Dep't of Family Servs.*, 2010 WY 117, ¶ 10, 237 P.3d 409, 412 (Wyo. 2010) (claim preclusion is res judicata, while collateral estoppel is issue preclusion). As we have previously explained:

> Res judicata bars the relitigation of previously litigated claims or causes of action, as well as claims that could or should have been raised in the prior litigation. [Pokorny v. Salas, 2003 WY 159, ¶¶ 12-20, 81 P.3d 171, 175-77 (Wyo. 2003)]. These factors are applied to the analysis of res judicata: (1)

---

[2] At the June 2, 2014 hearing, Breen never referred to compulsory counterclaims or Rule 13. However, this Court's review of the substance of her argument as to the challenged expenses at the hearing, summarized above, convinces us that it sufficed to preserve this issue for appeal.

[3] Under Rule 13, a counterclaim may be an independent claim or a claim for setoff or recoupment. *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.*, 818 P.2d 1137, 1140 (Wyo. 1991).

[4] Sometimes these are presented by orders to show cause, and sometimes they are raised by motion or petition.

Identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them.

*R.C.R., Inc. v. Deline*, 2008 WY 96, ¶ 19, 190 P.3d 140, 153-54 (Wyo. 2008). We review this issue de novo. *Roberts v. Locke*, 2013 WY 73, ¶ 14, 304 P.3d 116, 120 (Wyo. 2013).[5]

[¶17] Black's claims are barred if they could have been litigated in the 2012 proceeding. Clearly they could have been – and they were, ineffectively, because he raised an offset to Breen's claims both in his responsive pleading to the 2012 motion seeking to have him held in contempt and in the hearing on that motion. He simply failed to prove the offset. The district court entered a judgment resolving those issues.

[¶18] *In re M.K.R.*, 216 S.W.3d 58 (Tex. App. 2007), which the Texas court described as a "two-bite arrearage" claim, provides some guidance. In that case, the mother sought and obtained an order for arrearages, and then attempted to claim additional arrearages relating to the time period covered by the original order. After considering a number of technical defenses, the court concluded that there was no reason the mother could not have included her later claims in the original petition, and that they were therefore barred by res judicata or claim preclusion. *Id.* at 66.

[¶19] Although he was in the position of responding to Breen's efforts to hold him in contempt, we see no reason why Black could not have proven his setoff or claim he pled in 2012, nor why he should be allowed a second bite at the apple. This Court has long abided by the rule that a party should not be permitted to subsequently litigate facts which he could have raised but failed to raise or prove in a prior action that concerned the same subject matter. That rule protects the opposing party from having to expend excessive time and money in defending against an alleged liability in several proceedings rather than in one, and it carries the systemic benefit of avoiding unnecessary and unduly prolonged litigation. *Davis v. Davis*, 56 Wyo. 524, 534-35, 111 P.2d 124, 127 (Wyo. 1941). We can think of few places where such limitations can provide more benefit to courts, litigants, and the litigants' children than in post-divorce proceedings.[6]

---

[5] If this case involved questions of disputed fact as to what occurred at the 2012 hearing, and the district court had resolved them, those rulings would be evaluated under the clearly erroneous standard. 18 Wright et al., *Fed. Prac. & Proc. Juris.*, § 4405 (2d ed. updated 2015). Because the pleadings and conduct of the previous hearing are a matter of record and require no factual determinations, the review is de novo. *Id.*

[6] This decision deals with a narrow circumstance in which it is not only clear that Black could but did raise the issue of what he was owed in the prior proceeding, and we go no further than that. However, we note that counsel and litigants would be wise to consider whether claims similar to the one in this case could be litigated in post-divorce proceedings. We do not suggest that a party must raise all claims he or

[¶20] We therefore reverse the district court's judgment as to the amount of medical expenses for which Black should be reimbursed and remand for a recalculation in accordance with this opinion. We understand that this is a harsh result for Mr. Black, and that Ms. Breen's conduct has hardly been exemplary, but forfeiture of the right to recover the disputed amounts could easily have been avoided by the exercise of ordinary diligence in the prior proceeding.

**Evidence of Willfulness**

[¶21] Breen contends that the district court's order holding her in contempt for failing to contribute to the payment of her daughters' medical expenses was not supported by clear and convincing evidence that her failure to pay was willful. Civil contempt requires clear and convincing evidence of: 1) an effective court order that requires certain conduct by the alleged contemnor; 2) proof that the contemnor had knowledge of the order; and 3) that the alleged contemnor disobeyed the order. *Shindell v. Shindell*, 2014 WY 51, ¶ 10, 322 P.3d 1270, 1274 (Wyo. 2014). Once these elements are proven, the burden shifts to the respondent to prove that he or she was unable to comply with the order. *Id.* Clear and convincing evidence is evidence that would persuade a finder of fact that the truth of the contention is highly probable. *Id.* (citing *TMC v. State, Dep't of Family Servs. (In re ARC)*, 2011 WY 119, ¶ 14, 258 P.3d 704, 708 (Wyo. 2011); *MN v. State, Dep't of Family Servs.*, 2003 WY 135, ¶ 5, 78 P.3d 232, 234 (Wyo. 2003)).

[¶22] We will not interfere with an order holding a party in civil contempt "absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *Shindell*, ¶ 7, 322 P.3d at 1273 (quoting *Roberts*, ¶ 14, 304 P.3d at 120). We must determine whether the court reasonably could have concluded as it did. *Shindell, id*.

[¶23] As explained above, Breen's defense against the contempt allegation consisted entirely of assertions that Black never apprised her of what she owed. However, Black and his new wife testified that they went to great lengths to provide Breen with that information through phone calls, e-mail, text messages, and regular and certified mail. Breen met those efforts with either no response or responses that avoided the medical expenses issue. Black also testified that he was afraid to personally approach Breen with that information because she had more than once filed false stalking charges against him.

[¶24] The district court was entitled to find that testimony credible and to conclude that Breen's efforts to avoid contact concerning her daughters' medical expenses were

she may have to avoid res judicata. For example, in *In re P.D.D.*, 256 S.W.3d 834 (Tex. App. 2008), the father sought a change of custody, which was granted by stipulation, and then claimed that the mother was barred from claiming back child support she was owed. The court held that the claims were not barred because they did not arise out of the same transaction, although they could have been raised. *Id.* at 844.

sufficiently elaborate, pervasive, and successful to show that they were not inadvertent or accidental. The evidence indicated that it was highly probable that Breen's failure to contribute to the payment of those expenses was not merely willful, but premeditated. We therefore find no abuse of discretion or error of law or procedure. Accordingly, we affirm the decision of the district court in this respect.

**The Nature of the Contempt Order**

[¶25] Breen argues that what otherwise would have been an appropriate civil contempt proceeding and order concerning what she owed Black for their daughters' medical expenses was transformed into a procedurally deficient criminal contempt proceeding and order because the district court miscalculated what she owed when it did not apply res judicata and allowed Black to collect on bills he should have presented in the 2012 proceeding. That argument rests on the notion that the court's overestimation of her liability should be deemed sufficiently punitive to effect that transformation.

[¶26] Nowhere does Breen cite any authority for that bizarrely counterintuitive theory, and we can find none. Where an appellant's argument as to some aspect of a district court decision consists entirely of hyperbole and conclusions without cogent reasoning or pertinent authority, this Court may summarily affirm on that point. *Reese v. State Bd. of Outfitters*, 931 P.2d 958, 959 (Wyo. 1997). We will do so here.

**Contempt for Failing to Communicate and Cooperate**

[¶27] Breen finally argues that the district court erred by holding her in contempt not only for failing to reimburse Black for medical expenditures, but also for failing to abide by the provision contained in two of its decrees that she appropriately communicate and cooperate with him in attending to their daughters' welfare. She correctly points out that neither Black's 2014 motion nor the court's order to show cause advised her that she was being called upon to defend against an alleged violation of those provisions. Consequently, if the record shows that the court in fact held her in contempt for such a violation, we might arguably be compelled to reverse that portion of the decision. However, we will not reach that issue because the record convinces us that the district court intended to hold Breen in contempt only for her willful failure to pay her share of medical expenses.

[¶28] Breen's argument rests on a single passage from the transcript of the June 2, 2014 contempt hearing.

> And the court finds, Ms. Breen, that **you are in willful contempt of court, civil contempt of court for failing to pay your half of the medical bills**. And I say that because I am persuaded by the evidence . . . adduced by Mr. Black that

7

he has tried repeatedly over the years to open a door of communication with you to settle this matter. And I am sure there are a lot of other matters out there as well. And he just can't seem to pin you down as to where he should even send the bills, and then how to settle on a number. And what's curious is that **I don't see really that you are objecting to the general proposition that you owe half. It is more a question of making yourself unavailable. And that is contemptuous behavior**. It violates the cooperate to language, the cooperate language in the decree modifying which requires parties to act in good faith towards each other.

(Emphasis added).

[¶29] The first sentence articulates the district court's intent to hold Breen in willful civil contempt for failing to pay her share of medical bills. The next six sentences, in our view, explain why the court found the lack of payment willful. As we suggested above, Breen's protracted, orchestrated avoidance of communication relating to the bills was highly probative of the willfulness of her failure to pay, and of her contemptuous attitude toward payment of a known obligation.

[¶30] In light of that, the final sentence upon which Breen so heavily relies appears to be nothing more than an aside by the court to the effect that such behavior also violated another provision of its decree. Nowhere did the court indicate it was relying on that violation as a separate, independent basis for holding Breen in contempt. The decision rested solely on her failure to contribute to the costs of her daughters' medical care.

## CONCLUSION

[¶31] We affirm the district court's civil contempt order of July 2, 2014, except for that portion issuing a judgment to Black for $6,075.13. That judgment included amounts he was barred from seeking due to his failure to prove them after raising them in earlier proceedings. As to that award, we reverse and remand with instructions for the district court to recalculate the amount owed by Breen and to amend its order in a manner consistent with this opinion. Affirmed in part, reversed in part, and remanded.