Harold HOLMES, Appellant,

v.

Amy WILLIAMS and The Office of the Attorney General of Texas, Appellees.

No. 01–09–00991–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 19, 2011.

Lauren E. Waddell, The Waddell Law Firm, P.C., Mari L. Wise, The Wise Law Firm, Houston, for Appellant.

Karen L. Marvel, Sinkin & Barretto, P.L.L.C., Steven Alan Sinkin, Law Office of Sinkin & Marvel, San Antonio, Rande K. Herrell, Assistant Attorney General, Child

Support/Appellate Litigation Section, Austin, Randy Boykin, Office of the Attorney General, Houston, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Harold Holmes, appeals a judgment in favor of appellee, Amy Williams, determining and rendering judgment for child-support arrearages, including accrued interest, and ordering that Williams be entitled to issue child-support liens, levies, and writs of income withholding as remedies for the collection of unpaid child support. Challenging on the grounds of dormancy and lack of subject-matter jurisdiction, Holmes contends that the trial court erred by determining and rendering judgment for child-support arrearages and ordering that Williams be entitled to the collection remedies. We conclude that dormancy is inapplicable to overdue child-support payments and that the trial court had jurisdiction to determine and render judgment for child-support arrearages and order that Williams be entitled to the collection remedies. Holmes also contends that Williams's notice of child-support liens was improper as a matter of law and that the trial court abused its discretion by failing to file findings of fact and conclusions of law. We conclude that any impropriety in Williams's child-support lien or the trial court's failure to file findings of fact and conclusions of law is harmless. We affirm.

## Background

In June 1965, Williams and Holmes were married. In December, Williams gave birth to their only child, Glenna. The following November, the trial court entered a default final divorce decree, stating that Holmes, although legally cited to answer, failed to answer or appear at trial. The decree required that Holmes pay $10 per week in child support for Glenna. From 1966 through March 1978, Holmes failed to make any child-support payments.

In early 1978, an attorney acting on Williams's behalf contacted Holmes. Through their attorneys, Williams and Holmes entered into a verbal agreement concerning the child-support obligation. Pursuant to their agreement, Holmes paid Williams a lump sum of $1,500 in April. Beginning in May, Holmes paid Williams $125 per month in child support until Glenna turned 18 years old in December 1983.

On July 19, 2005, when Glenna was 39 years old, William filed a notice of child-support lien with the county clerks for Harris County, Texas, Fort Bend County, Texas, and Los Angeles County, California, alleging $142,090.69 as the "[a]mount of child-support arrears" as of that date. The next day, Williams filed copies of the notice with financial institutions holding Holmes's financial accounts. In the accompanying cover letters, Williams stated that any accounts to which the lien applied must be immediately frozen.

Holmes responded by filing an emergency motion to release child-support liens, dispute the amount of arrearages stated in child-support liens, and resolve the ownership interest with respect to property subject to child-support liens, pursuant to section 157.323 of the Texas Family Code. Williams subsequently filed notice of writ of withholding with the trial court pursuant to section 157.301.

On December 18, 2007, the trial court heard legal arguments and evidence at the trial of this matter. Earlier that day, Holmes filed a trial brief, and the Office of the Attorney General of Texas (OAG) filed

an intervention, although it did not participate in the trial.

On October 1, 2009, the trial court signed a final order stating:

> **IT IS ORDERED** that Amy Williams in granted and rendered a judgment for child support arrearages, including accrued interest against Harold F. Holmes in the amount of $49,934.70 as of June 19, 2009, the date of rendition of this judgment, such judgment bearing interest at 6 percent simple interest per year until the judgment is paid and is rendered on June 19, 2009.
>
> . . .
>
> **IT IS ORDERED** that Amy Williams is entitled to issue child support liens, levies, and writs of income withholding as remedies for the collection of unpaid child support, and all remedies available to enforce the child support arrearage judgment enumerated above shall be payable as permitted by the Texas Family Code and through this Court's ***Employer's Order Withholding from Harold Holmes's Earnings*** with the following exceptions . . . .

The court also granted a judgment against Holmes for $5,000 in attorney's fees plus an additional $3,000 if he unsuccessfully appealed to an intermediate court of appeals and an additional $2,000 if he then unsuccessfully petitioned for review to the Supreme Court of Texas. The court also granted a judgment against Holmes for $552.08 in court costs.

Holmes timely filed a request for findings of fact and conclusions of law and timely filed a notice of past-due findings of fact and conclusions of law. After Holmes gave notice of this appeal, this Court ordered the judgment in this case be suspended until the resolution of this appeal. Within 30 days of that order, this Court withdrew it and ordered that the funds withheld from Holmes be deposited in the trial court registry pending resolution of this appeal.

## Time Limitations

In his first issue, Holmes contends that the trial court erred by rendering judgment for the total amount of child-support arrearages, including accrued interest, attorney's fees, and court costs. In particular, Holmes bases this contention on the limitation of a court's jurisdiction to confirm and render a cumulative judgment for child-support arrearages, provided in Texas Family Code, and the dormancy provision, found in the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC & REM. CODE §§ 31.006 (West 2008), 34.001(a) (West Supp. 2010); TEX. FAM.CODE. ANN. § 157.005(b) (West Supp. 2010).

### A. Standard of Review

In construing a statute, a court must "ascertain and give effect to the Legislature's intent." *HCBeck, Ltd. v. Rice,* 284 S.W.3d 349, 352 (Tex.2009). A court begins with the "plain and common meaning of the statute's words" to ascertain the Legislature's intent. *Id.* (quoting *Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004)). A court considers the statute as a whole and not its provisions in isolation. *City of Waco v. Kelley,* 309 S.W.3d 536, 542 (Tex.2010). A court also considers the objective the Legislature sought to achieve through the statute as well as the consequences of a particular construction. *HCBeck,* 284 S.W.3d at 352 (citing TEX. GOV'T CODE ANN. § 311.023(1), (5) (West 2005)). An appellate court reviews de novo questions of statutory construction. *MCI Sales & Serv., Inc. v. Hinton,* 329 S.W.3d 475, 500 (Tex.2010). Similarly, an appellate court reviews de novo questions of subject-matter jurisdiction. *City of Elsa v. Gonzalez,* 325 S.W.3d 622, 625 (Tex.2010).

## B. Jurisdiction

■ In his first issue, Holmes contends section 157.005(b) of the Texas Family Code deprived the trial court of jurisdiction to determine and render a judgment for child-support arrearages because more than 10 years passed since his daughter attained 18 years of age and the child-support obligation terminated. Holmes interprets the jurisdictional time limit in section 157.005(b) as applying to every private enforcement mechanism contained in the Texas Family Code—cumulative money judgments, child-support liens, child-support levies, and wage withholdings. Section 157.005(b) states:

> The court retains jurisdiction to confirm the total amount of child support arrearages and render a cumulative money judgment for past-due child support, as provided by Section 157.263, if a motion for enforcement requesting a cumulative money judgment is filed not later than the 10th anniversary after the date:
>
> (1) the child becomes an adult; or
>
> (2) on which the child support obligation terminates under the child support order or by operation of law.

TEX. FAM.CODE ANN. § 157.005(b). The plain language of section 157.003(b) unambiguously indicates that it applies only to cumulative money judgments for past-due child support as provided by section 157.263. *Isaacs v. Isaacs*, 338 S.W.3d 184, 187–88 (Tex.App.-Houston [14th Dist.] 2011, no. pet. h.), *see* TEX. FAM.CODE ANN. § 157.005(b). Section 157.263(a) states, "If a motion for enforcement of child support requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative money judgment." TEX. FAM.CODE ANN. § 157.263(a) (West 2008).

■ Holmes's daughter attained 18 years of age in December 1983, at which point his child-support obligation terminated. Pursuant to section 157.005(b), in December 1993, the trial court lost jurisdiction to confirm the total amount of child-support arrearages and render a cumulative money judgment for past-due child support as provided by section 157.263 because Williams had failed to file a motion for enforcement. *See id.* § 157.005(b). However, Williams never sought and the trial court never granted relief under section 157.263. *See Isaacs*, 338 S.W.3d at 187–88; *Overton v. Overton*, No. 14–09–00865–CV, 2011 WL 398046, at *3–4 (Tex. App.-Houston [14th Dist.] Feb. 8, 2011, no pet.) (mem. op.) (applying similar analysis under 2005 version of section 157.005(b)). A cumulative money judgment for past-due child support results only after the obligee files a motion for the enforcement of child support requesting a money judgment for arrearage. TEX. FAM.CODE ANN. § 157.263(a); *see Isaacs*, 338 S.W.3d at 187–88; *Overton*, 2011 WL 398046, at *34. This litigation is not premised on a motion for the enforcement of child support requesting a money judgment for arrearage. Instead, this litigation began when Holmes invoked the jurisdiction of the trial court to dispute the amount of arrearages stated in Williams's notices of child-support liens, pursuant to section 157.323.

Section 157.323(a) provides that an obligor may bring "an action . . . to dispute the amount of arrearages stated in the [child-support] lien. . . ." TEX. FAM.CODE ANN. § 157.323(a) (West 2008). "If arrearages are owed by the obligor, the court shall . . . render judgment against the obligor for the amount due, plus costs and reasonable attorney's fees. . . ." *Id.* § 157.323(c)(1). Section 157.318(a) expressly provides that a child-support "lien is effective until all . . . child support arrearages, including interest, any costs and reasonable attorney's fee . . . for which the obligor is responsible, have been paid or

the lien is otherwise released as provided by this subchapter." *Id.* § 157.318(a) (West Supp. 2010); *see Isaacs,* 338 S.W.3d at 188 ("Under the unambiguous language of these statutes, [the obligee] has several cumulative remedies by which she can choose to seek payment of unpaid child support.... Under its unambiguous language, section 157.005(b) does not limit the trial court's jurisdiction to grant [relief under sections 157.323]."); *Overton,* 2011 WL 398046, at *3–4 (judgment for arrears under section 157.323 are not prohibited by section 157.005(b)). We conclude that section 157.005(b) only limits jurisdiction over actions brought pursuant to section 157.263—cumulative money judgments for past-due child support—and that it does not preclude jurisdiction here because the trial court obtained jurisdiction under section 157.323—disputes as to the amount of arrearages stated in a child-support lien.

## C. Dormancy

 Holmes contends that a child-support payment not timely made for which a writ of execution is not issued within 10 years of the due date is dormant and if not revived within two years, can no longer be revived. Holmes observes that "[a] child support payment not timely made constitutes a final judgment for the amount due and owing, including interest as provided in this chapter." TEX. FAM. CODE ANN. § 157.261(a) (West 2008). Holmes contends that each overdue child-support payment, therefore, went dormant after 10 years pursuant to section 34.001(a) of the Texas Civil Practice and Remedies Code, which states:

> If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived.

TEX. CIV. PRAC & REM.CODE § 34.001(a); *see id.* § 31.006 (West 2008) ("A dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant.").

From 1997, when this question was first considered on appeal, until 2007, Texas courts unanimously held that dormancy did not apply to individual, overdue child-support payments. *In re K.K.,* No. 02–04–00269–CV, 2006 WL 133506, at *34 (Tex. App.-Fort Worth Jan. 19, 2006, no pet.) (mem. op.); *In re J.M.D.,* No. 14–03–01196–CV, 2006 WL 1148113, at *1 (Tex. App.-Houston [14th Dist.] March 30, 2006, pet. denied) (mem. op.); *In re E.C.M.,* 225 S.W.3d 11, 13 (Tex.App.-El Paso 2005, no pet.); *In re J.M.R.,* No. 04–03–00284–CV, 2004 WL 1392284, at *2 (Tex.App.-San Antonio June 23, 2004, no pet.); *In re S.C.S.,* 48 S.W.3d 831, 835–36 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *In re Kuykendall,* 957 S.W.2d 907, 911 (Tex. App.-Texarkana 1997, no pet.); *see also In re D.T.,* No. 12–05–00420–CV, 2007 WL 4465250, at *2 (Tex.App.-Tyler Dec. 21, 2007, no pet.) (mem. op.). One week before the trial in the present matter, the Dallas Court of Appeals, explicitly rejecting its sister courts' interpretation, held for the first time that dormancy applied to individual, overdue child-support payments. *Burnett–Dunham v. Spurgin,* 245 S.W.3d 14, 17 (Tex.App.-Dallas 2007, pet. denied). We have never expressed an opinion on the applicability of dormancy to individual, overdue child-support payments. *See Cobb v. Gordy,* No. 01–09–00764–CV, 2011 WL 494801, at *2–3 (Tex. App.-Houston [1st Dist.] Feb. 10, 2011, no. pet. h.).

In 2009, at the first legislative session following the *Burnett–Dunham* opinion, the Texas Legislature amended section 34.001 of the Civil Practice and Remedies

Code for the first time since its enactment, to explicitly state, "This section does not apply to a judgment for child support under the Family Code." Act of May 28, 2009, 81st Leg. R.S., ch. 767, § 31, sec. 34.001, 2009 Tex. Gen. Laws 1938, 1948 (codified at TEX. CIV. PRAC. & REM.CODE ANN. § 34.001(c)). The Legislature expressly provided that section 34.001(c) "applies to each judgment for child support under the Family Code, regardless of the date on which the judgment was rendered." *Id.* § 50, 2009 Tex. Gen. Laws at 1950. Holmes contends that the retroactive application of section 34.001(c) to him would violate the Texas Constitution. *See* TEX. CONST. art. I, § 16 ("No ... retroactive law ... shall be made.").

Legislative inaction over numerous sessions after a judicial interpretation of a statute suggests approval of that interpretation. *Allen Sales & Servicenter, Inc. v. Ryan,* 525 S.W.2d 863, 866 (Tex.1975); *Moss v. Gibbs,* 370 S.W.2d 452, 458 (Tex. 1963); *Adams v. City of Weslaco,* No. 13–06–00697–CV, 2009 WL 1089442, at *8 (Tex.App.-Corpus Christi Apr. 23, 2009, no pet.) (mem. op.); *State v. Airgas–Mid South, Inc.,* 83 S.W.3d 890, 892 (Tex.App.-Texarkana 2002, no pet.); *Blount v. Dutton,* 967 S.W.2d 955, 957 (Tex.App.-Beaumont 1998, no pet.); *Reed v. State of Texas Dep't of Licensing & Regulation,* 820 S.W.2d 1, 4 (Tex.App.-Austin 1991, no writ). Conversely, an appellate court may look to later amendments for guidance in statutory interpretation. *Cash Am. Int'l Inc. v. Bennett,* 35 S.W.3d 12, 17–18 (Tex. 2000). A statutory amendment that codifies a prior judicial interpretation is not unconstitutionally retroactive. *In re W.G.S.,* 107 S.W.3d 624, 630 (Tex.App.-Corpus Christi 2002, no pet.) (amendment to Family Code that codified principle already extant in common law was not **unconstitutionally retroactive**); *see Armstrong v. Steppes Apartments, Ltd.,* 57 S.W.3d 37, 48 (Tex.App.-Fort Worth 2001, pet. denied) (holding law is not retroactive where it does not affect substantive change).

The Legislature's persistent inaction following the consistent judicial interpretation of every court of appeals before *Burnett–Dunham,* combined with its swift action following *Burnett–Dunham,* indicates the Legislature approved of the interpretation that dormancy did not apply to an individual, overdue child-support payment. As it applies to an individual, overdue child-support payment, the Legislature's 2009 amendment codifies this prior interpretation of section 34.001, announced by every court of appeals considering the question before the Dallas Court of Appeals' decision in *Burnett–Dunham,* which the amendment rejects. *See Cobb,* 2011 WL 494801, at *2–3. Concluding that the 2009 amendment codifies this prior judicial interpretation, we hold that the 2009 amendment is not unconstitutionally retroactive as it applies to this case. *See In re W.G.S.,* 107 S.W.3d at 630.

We overrule Holmes's first issue.

### Propriety of Notice of Child–Support Lien

In his second issue, Holmes contends that Williams's notice of child-support lien, issued to the financial institutions, was improper as a matter of law.

#### A. Applicable Law

"A child support lien arises by operation of law against real and personal property of an obligor for all amounts of child support due and owing, including any accrued interest, regardless of whether the amounts have been adjudicated or otherwise determined, subject to the requirements of this subchapter for perfection of the lien." TEX. FAM.CODE ANN. § 157.312(d)

(West 2008). "[A] child support lien is perfected when an abstract of judgment for past due child support or a child support lien notice is filed or delivered as provided by Section 157.314." *Id.* § 157.316(a) (West Supp. 2010). "[A] child support lien notice must contain ... the amount of child support arrearages owed by the obligor and the date of the signing of the court order, administrative order, or writ that determined the arrearages or the date and manner in which the arrearages were determined ...." *Id.* § 157.313(a)(5) (West 2008).

### B. Analysis

Holmes accurately observes that the notice fails to state the manner in which the child-support arrearages were determined. Because at that point, no judicial or administrative determination of child-support arrearages had been made, a statement of the manner of determination was required for Williams to perfect her child-support liens. *See id.* § 157.313(a), 157.316. Nevertheless, nothing in the trial court's final order is to the contrary. The trial court rejected the determination of child-support arrearages stated in Williams's notice and made a new determination. The trial court then ordered that Williams be "entitled to issue child support liens [and] levies...." The trial court made no determination concerning the perfection of Williams's child-support liens.

We overrule Holmes's second issue.

### Failure to File Findings of Fact and Conclusions of Law

■ In his third issue, Holmes contends that the trial court abused its discretion by failing to file findings of fact and conclusions of law for the final order. Holmes asserts that he was harmed because "[t]he trial court's failure to file findings of fact and conclusions of law requires [him] to guess as to the reasons that the trial court thought it had jurisdiction to make a determination of child support [arrearages], interest thereon and attorney [sic] fees ...."

■ "Because the trial court's duty to file findings and conclusions is mandatory, the failure to respond when all requests have been properly made is presumed harmful, unless 'the record before appellate court affirmatively shows that the complaining party has suffered no injury.' " *Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex.1989) (quoting *Wagner v. Riske,* 142 Tex. 337, 343, 178 S.W.2d 117, 120 (1944)). The failure to file findings of fact is harmful error if the appellant is thereby prevented from making an appeal. *White v. Harris–White,* No. 01–07–00521–CV, 2009 WL 1493015, at *6 (Tex.App.-Houston [1st Dist.] May 28, 2009, pet. denied) (mem. op.); *Panchal v. Panchal,* 132 S.W.3d 465, 467 (Tex.App.-Eastland 2003, no pet.). The remedy for such a harmful error is for the reviewing court to abate the appeal. *White,* 2009 WL 1493015, at *6; *Panchal,* 132 S.W.3d at 467. The controlling issue is whether the circumstances of the particular case require the appellant to guess at the reasons for the trial court's decision. *White,* 2009 WL 1493015, at *6 (citing *Goggins v. Leo,* 849 S.W.2d 373, 379 (Tex.App.-Houston [14th Dist.] 1993, no writ); *Awad v. Rasmussen–Awad,* 2004 WL 744234, at *3 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (memo. op.)).

■ However, findings of fact are unnecessary if the matters in question are not disputed. *Landerman v. State Bar of Texas,* 247 S.W.3d 426, 430 (Tex.App.-Dallas 2008, pet. denied) (quoting *Barker v. Eckman,* 213 S.W.3d 306, 310 (Tex.2006)); *Rollins v. Am. Exp. Travel Related Servs. Co., Inc.,* 219 S.W.3d 1, 5–6 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Accord-

ingly, where the facts are undisputed and the only matters presented on appeal are legal issues to be reviewed de novo, the failure to file findings of fact and conclusions of law is harmless error. *Landerman*, 247 S.W.3d at 430–31 (quoting *Rollins*, 219 S.W.3d at 5–6). The only issues Holmes presents on appeal concern the trial court's jurisdiction and statutory construction, both of which are questions of law reviewed de novo. *See MCI Sales & Serv.*, 329 S.W.3d at 500; *City of Elsa*, 325 S.W.3d at 625. We conclude that any error in failing to file findings of fact and conclusions of law is harmless.

We overrule Holmes's third issue.

### Conclusion

We affirm.