

## Court of Appeals
## Fourth Court of Appeals District of Texas
## San Antonio

★ ★ ★ ★ ★ ★ ★



## OPINION

No. 04-11-00089-CV

In the Interest of **D.W.G.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-14844
Honorable Peter A. Sakai, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:          Karen Angelini, Justice
                  Sandee Bryan Marion, Justice
                  Phylis J. Speedlin, Justice

Delivered and Filed:  August 29, 2012

REVERSED AND REMANDED

      This is an appeal from a judgment determining appellant Jim Wilburn owes child support arrearages in the amount of $171,626.65. This case began when appellee Virginia Tanguma Wilburn filed a notice of application for a judicial writ of withholding with the trial court clerk. In her initial application, Virginia alleged Jim owed her $129,950.58 in past due child support. Virginia later amended her initial application, increasing the amount to $171,626.65. Jim moved to stay the issuance and delivery of the judicial writ of withholding, disputing the existence and the amount of arrears. Jim also raised various defenses to the issuance of a judicial writ of withholding, moved to dismiss Virginia's claim for a determination of child support arrearages, and moved for partial summary judgment. Virginia filed three summary judgment motions. The

trial court denied Jim's motion to dismiss and motion for partial summary judgment, and granted all of Virginia's summary judgment motions.

On appeal, Jim argues the trial court erred in (1) denying his motion to dismiss; (2) denying his motion for partial summary judgment; and (3) granting Virginia's summary judgment motions. First, we conclude Jim's motion to dismiss was properly denied. Second, we conclude we are unable to review the denial of Jim's partial summary judgment motion. Finally, we conclude summary judgment was properly granted as to three of Jim's defenses, but was otherwise improperly granted. We reverse the trial court's judgment, and remand this case to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Jim and Virginia were divorced in Nueces County, Texas, in 1958. In the divorce decree, Jim was ordered to pay $15.00 per week for support of the couple's minor child, Diane. This amount was later modified to $60.00 per month. The payments were ordered to be made to the domestic relations department of the district attorney's office at the Nueces County Courthouse. When Jim failed to make payments as ordered, Virginia initiated a contempt action against him. The trial court found Jim guilty of contempt for failing to pay child support as ordered, and found Jim "in arrears with his child support payments" "in the amount of $1500.00." Jim was ordered to pay $10.00 per month toward "the amount in arrears in past child support payments, which sum has been stipulated to be the total sum of $1,500.00." The contempt order, which was approved by the attorneys for both parties, was signed by the trial court on December 11, 1970. Jim's child support obligation ended in 1975, when Diane turned eighteen years old.

More than three decades later, on March 9, 2009, Virginia filed a notice of application for a judicial writ of withholding with the trial court clerk in Nueces County. In the application,

Virginia contended Jim owed her $129,950.58 in past due child support as of March 3, 2009. Jim was served with the notice on March 20, 2009. On March 23, 2009, Jim filed a motion to stay the issuance and delivery of the judicial writ of withholding, denying he owed any past-due child support and disputing the amount of arrears. Virginia filed an answer to Jim's motion to stay, and asked for affirmative relief consisting of a determination of arrearages under section 157.323 and Chapter 158 of the Texas Family Code. Neither the parties nor the trial court set an immediate hearing on Jim's motion to stay. In May 2009, the cause was transferred from Nueces County to Bexar County, Texas.

Next, Jim filed pleadings in which he raised various defenses, including dormancy, laches, res judicata, collateral estoppel, payment, and accord and satisfaction. Additionally, Jim's current wife, Elia Wilburn, intervened in the action and raised similar defenses. Elia, whose claims were eventually severed, is not a party to this appeal. Jim also moved to dismiss Virginia's requests for affirmative relief based on (1) section 157.005(b) of the Family Code, which bars claims for cumulative money judgments filed more than ten years after the child reaches the age of majority; and (2) section 34.001 of the Texas Civil Practice and Remedies Code, more commonly known as the dormancy statute. Jim further moved for partial summary judgment, arguing that the contempt order finding the past due arrearages to be $1500.00 as of December 11, 1970, was res judicata as to part of the arrearages claimed by Virginia.

Thereafter, Virginia filed an amended notice of application for a writ of judicial withholding stating that Jim owed her arrearages totaling $171,626.65 as of July 31, 2009. Virginia also filed three separate motions for summary judgment. Her first motion for summary judgment asserted Jim's failure to secure a hearing on his motion to stay within the time period prescribed in section 158.309 of the Texas Family Code divested the trial court of jurisdiction to

hear Jim's challenge to the alleged arrears. Virginia further asserted there was no genuine issue of material fact with respect to Jim's defenses, and she was entitled to summary judgment against Jim for child support arrearages in the amount of $171,626.65, and the issuance of a judicial writ of withholding.

Virginia's second motion for summary judgment, which purports to be a no-evidence summary judgment motion, challenged some but not all of the defenses raised by Jim. Specifically, Virginia's second motion for summary judgment argued summary judgment should be granted against Jim's affirmative defenses based on Section 157.005(b) of the Texas Family Code, the dormancy statute, and laches. Virginia's third motion for summary judgment, which also purports to be a no-evidence summary judgment motion, reiterated the arguments made in her second motion for summary judgment and made an additional argument: that summary judgment should be granted against Jim's res judicata defense. Virginia's third motion for summary judgment was initially filed as to Elia, but was made applicable to Jim by agreement of the parties.

On April 27, 2010, the trial court held a hearing on the pending motions. On November 9, 2010, the trial court signed an order (1) granting all of Virginia's summary judgment motions; (2) denying Jim's dismissal and summary judgment motions; (3) granting Virginia a determination of arrearages in the amount of $171,626.65;[1] and (4) awarding Virginia $50,739.00 in attorney's fees. Jim appealed.

---

[1]The record before us does not reflect how this amount was calculated. However, in light of the arguments presented on appeal, we presume this amount was calculated without reference to the $1500.00 arrearage amount stipulated to by the parties in the 1970 contempt order.

**MOTION TO DISMISS**

Jim argues the trial court erred in denying his motion to dismiss. In this motion, Jim argued that Virginia's request for a judicial writ of withholding and a determination of arrearages was precluded by section 157.005(b) of the Texas Family Code and the dormancy statute.

## A. Section 157.005(b) of the Texas Family Code

Section 157.005(b) of the Texas Family Code, titled "Time Limitations; Enforcement of Child Support," provides:

> The court retains jurisdiction *to confirm the total amount of child support arrearages and render a cumulative money judgment for past-due child support*, *as provided by Section 157.263*, if a motion for enforcement requesting a cumulative money judgment is filed not later than the 10th anniversary after the date:
>
> (1) the child becomes an adult; or
>
> (2) on which the child support obligation terminates under the child support order or by operation of law.

TEX. FAM. CODE ANN. § 157.005(b) (West Supp. 2012) (emphasis added). Section 157.263 of the Texas Family Code authorizes a court to confirm the amount of arrearages and render a cumulative money judgment. TEX. FAM. CODE ANN. § 157.263 (West Supp. 2012).

Here, Virginia sought a writ of judicial withholding, which is authorized under chapter 158 of the Texas Family Code. Virginia also sought a determination of arrearages under section 157.323 of the Texas Family Code, which authorizes the determination of arrearages in the context of a suit on a child support lien. TEX. FAM. CODE ANN. § 157.323 (West 2008). Under section 158.102 of the Texas Family Code, the court may order income withholding until all current support, arrearages, interest, and any applicable fees and costs have been paid. TEX. FAM. CODE ANN. § 158.102 (West 2008). Under section 157.318, a child support lien is effective until

all arrearages have been paid or the lien is otherwise released. TEX. FAM. CODE ANN. § 157.318 (West Supp. 2012).

The Texas appellate courts that have been presented with the issue of whether section 157.005(b) applies to child support enforcement remedies other than a cumulative money judgment, such as writs of withholding and child support liens, have concluded it does not. *In re K.R.M.*, No. 11-11-00312-CV, 2012 WL 1143800, at *3 (Tex. App.—Eastland Apr. 5, 2012, no pet.); *Holmes v. Williams*, 355 S.W.3d 215, 219-20 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Isaacs v. Isaacs*, 338 S.W.3d 184, 187-88 (Tex. App.—Houston [14th Dist.] 2011, pet. filed); *Overton v. Overton*, No. 14-09-00865-CV, 2011 WL 398046, at *3-4 (Tex. App.— Houston [14th Dist.] 2011, pet. filed); *Packard v. Davis*, No. 2-08-022-CV, 2008 WL 4925998, at *2 (Tex. App.—Fort Worth 2008, no pet.). Similarly, based on the plain language of the statute, we conclude section 157.005(b) only applies to cumulative money judgments for past-due child support as provided by section 157.263, not to other child support enforcement remedies available under the Texas Family Code. Because Virginia neither sought nor obtained relief under section 157.263, section 157.005(b)'s deadlines for obtaining a cumulative money judgment do not apply to this case and did not operate to deprive the trial court of jurisdiction.

### B. Dormancy Statute

Section 34.001 of the Texas Civil Practice and Remedies Code, the dormancy statute, provides that "[i]f a writ of execution is not issued within 10 years after the rendition of a judgment," "the judgment is dormant and execution may not be issued on the judgment unless it is revived." TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a) (West Supp. 2012). Section 31.006 provides that a judgment may be revived not later than the second anniversary of the date that it becomes dormant. TEX. CIV. PRAC. & REM. CODE ANN. § 31.006 (West 2008). In 2009, the

Legislature amended section 34.001 to provide that it "does not apply to a judgment for child support under the Family Code." *Id*. § 34.001(c) (West Supp. 2012). In doing so, the Legislature expressly provided that the amendment applied "to each judgment for child support under the Family Code, regardless of the date on which the judgment was rendered." *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, 1985 Tex. Gen. Laws 3242, 3272, amended by Act of May 21, 2009, 81st Leg., R.S., ch. 767, 2009 Tex. Gen. Laws 1948, 1950.

On appeal, Jim advances two theories to support his dormancy argument. First, Jim argues that each child support payment not timely made was a final judgment. Section 157.261(a) of the Texas Family Code provides that "[a] child support payment not timely made constitutes a final judgment for the amount due and owing, including interest as provided in this chapter." TEX. FAM. CODE ANN. 157.261(a) (West 2008). Because Jim's final child support payment was due in 1975, and Virginia did not seek to execute on this or any of the previous payments until more than three decades later, her recovery is precluded by the dormancy statute. Second, Jim argues that the 1970 contempt order was a final judgment, and because Virginia did not seek to execute on it until almost four decades later, her recovery is precluded by the dormancy statute. We reject both theories based on the plain language of the dormancy statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(c). Because the judgments at issue are for child support, the dormancy statute does not apply. *See id.*; *Taylor v. Speck*, 308 S.W.3d 81, 87 (Tex. App.—San Antonio 2010, no pet.) (holding dormancy statute did not apply in a child support case).

Jim further argues that section 34.001(c) constitutes an unconstitutional retroactive law as applied to him. We disagree. In *Holmes v. Williams*, the First Court of Appeals rejected a similar argument after examining the legislative history of section 34.001(c). 355 S.W.3d at 220-21. The

First Court observed that from 1997 to 2007, Texas appellate courts unanimously held that the dormancy statute did not apply to child support judgments. *Id*. at 220. Nevertheless, in 2007, the Fifth Court of Appeals held for the first time that the dormancy statute applied to child support judgments. *Id*. (citing *Burnett-Dunham v. Spurgin*, 245 S.W.3d 14, 17 (Tex. App.—Dallas 2007, pet. denied). In direct response to the Fifth Court's holding in *Burnett-Dunham*, the Texas Legislature amended section 34.001 to state that dormancy did not apply to child support judgments. *Id*. at 220-21. Based on this history, the First Court rejected the argument that section 34.001(c) was unconstitutionally retroactive, recognizing the general rule that a statutory amendment that codifies a prior judicial interpretation is not unconstitutionally retroactive. *Id*. at 221 (citing *In re W.G.S.*, 107 S.W.3d 624, 630 (Tex. App.—Corpus Christi 2002, no pet.)). We adopt the reasoning in *Holmes*, and hold that section 34.001(c) is not unconstitutionally retroactive as applied to Jim.

Having concluded that the arguments presented in Jim's motion to dismiss lack merit, we hold the trial court did not err in denying Jim's motion to dismiss.

## MOTIONS FOR SUMMARY JUDGMENT

Next, Jim argues the trial court erred in granting Virginia's motions for summary judgment, and in denying his motion for partial summary judgment.

### A. Standard of Review

We review the trial court's summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a traditional motion for summary judgment, a movant must show that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors,*

*Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

When a movant files a no-evidence summary judgment motion, she must specifically challenge the evidentiary support for an element of a claim or defense. TEX. R. CIV. P. 166a(i) & cmt. (1997); *Flanagan v. Cenizo Invest. Ltd.*, No. 04-08-00590-CV, 2010 WL 2403722, at *4 (Tex. App.—San Antonio 2010, no pet.). Once a movant files a no-evidence summary judgment motion, the burden shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact on the challenged element of the claim or defense. TEX. R. CIV. P. 166a(i) & cmt (1997); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The non-movant is not required to marshal his proof; rather, he need only present some evidence of probative value raising a fact issue about which reasonable minds could differ. TEX. R. CIV. P. 166a(i) & cmt. (1997); *Flanagan*, 2010 WL 2403722, at *4. When reviewing both traditional and no-evidence summary judgments, we view the evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *Fielding*, 289 S.W.3d at 848; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003).

### B. Virginia's Motion for Summary Judgment Based on Jim's Failure to Timely Secure a Hearing

In her first summary judgment motion, Virginia argued that because Jim failed to timely request and secure a hearing on his motion to stay as required by section 158.307 of the Texas Family Code, he waived his right to contest her application for a judicial writ of withholding and the arrears were determined as a matter of law. Attached to Virginia's motion was an affidavit

from Virginia's attorney, stating she had not seen any request by Jim for a hearing on his motion to stay, nor had she agreed to waive the 30-day hearing requirement in this case. Also attached to the motion was Virginia's amended notice of application for judicial writ of withholding stating the child support arrears in this case, including interest, amounted to $171,626.25 as of July 31, 2009, and payment records from the Nueces County District Clerk. Virginia's first summary judgment was clearly a traditional motion for summary judgment.

In response to Virginia's summary judgment motion, Jim argued it was the trial court's duty to set a hearing on his motion to stay within thirty days. Additionally, Jim contested Virginia's calculation of arrearages, and urged that his defenses precluded summary judgment in favor of Virginia. In his response to Virginia's motion for summary judgment, Jim argued his motion to stay was filed in the manner required by section 158.307 of the Texas Family Code, and that the trial court never set a hearing as required by section 158.309 of the Texas Family Code. Jim further moved for partial summary judgment based on the doctrines of res judicata and collateral estoppel. In support of his motion, Jim cited a stipulation made by the parties stating that Jim was in arrears in past due child support payments for "the total sum of $1500.00." The stipulation was contained in a December 11, 1970, amended contempt order that was signed by Jim's and Virginia's attorneys and approved by the trial court. Jim moved the trial court to find that as of December 11, 1970, the total child support arrears, including interest, was the sum of $1,500.00. The trial court granted Virginia's motion for summary judgment and denied Jim's motion for partial summary judgment.

On appeal, Jim argues the trial court erred in granting Virginia's summary judgment motion for two reasons. First, Jim argues the ground presented in Virginia's summary judgment motion, that a party contesting a judicial writ of withholding waives his defenses by failing to

timely secure a hearing, was rejected by this court in *In re R.G.*, 362 S.W.3d 118, 123 (Tex. App.—San Antonio 2011, pet. filed). Second, Jim argues that fact issues precluded the trial court's finding that Jim owed $171,626.65 in arrearages.

The procedures governing judicial writs of withholding are important to our review of these arguments. Chapter 158 of the Family Code governs the withholding of earnings for child support, including judicial writs of withholding. Chapter 158 provides that if a delinquency occurs in child support payments in an amount equal to or greater than the total support due for one month, an obligee may file a notice of application for a judicial writ of withholding with the trial court clerk. TEX. FAM. CODE ANN. § 158.301 (West 2008). The notice shall state the amount of arrearages and the amount of wages that are to be withheld in accordance with a judicial writ of withholding. TEX. FAM. CODE ANN. § 158.302(1) (West 2008). An obligor may stay the otherwise automatic issuance of a judicial writ of withholding by filing a motion to stay. TEX. FAM. CODE ANN. §§ 158.307(a), (b); 158.312; 158.313 (West 2008). The grounds for filing a motion to stay issuance are limited to a dispute concerning the identity of the obligor, or the existence or the amount of the arrearages. TEX. FAM. CODE ANN. § 158.307(b). The obligor must file the motion to stay not later than the tenth day after receiving the notice of application seeking a judicial writ of withholding. *Id*. The filing of the motion to stay prevents the clerk of the trial court from delivering the judicial writ of withholding to the obligor's employer before a hearing is held. TEX. FAM. CODE ANN. § 158.308 (West 2008). If a motion to stay is filed, section 158.309 governs. Section 158.309 provides:

(a) If a motion to stay is filed in the manner provided by Section 158.307, the court shall set a hearing on the motion and the clerk of court shall notify the obligor, obligee, or their authorized representatives, and the party who filed the application for judicial writ of withholding of the date, time, and place of the hearing.

(b) The court shall hold a hearing on the motion to stay not later than the 30th day after the date the motion was filed, except that a hearing may be held later than the 30th day after filing if both the obligor and obligee agree and waive the right to have the motion heard within 30 days.

(c) Upon hearing, the court shall:

(1) render an order for income withholding that includes a determination of the amount of child support arrearages, including medical support and interest; or

(2) grant the motion to stay.

TEX. FAM. CODE ANN. § 158.309 (West 2008).

In *R.G.*, we interpreted section 158.309(a) as imposing a duty on the trial court, not the obligor, to set a hearing on a motion to stay. 362 S.W.3d at 121-23. We held the trial court erred in concluding it did not have jurisdiction to consider the obligor's defenses to the issuance of a judicial writ of withholding based on the obligor's failure to timely request a hearing, and reversed and remanded for further proceedings. *Id*. at 123.

Here, no one disputes that Jim timely filed his motion to stay. However, Virginia asserts section 158.309(a) imposed a duty on Jim to set a hearing on his motion to stay not later than the thirtieth day after the date the motion was filed. Virginia further asserts Jim's failure to set a hearing on his motion to stay within the time specified in the statute deprived the trial court of jurisdiction to consider Jim's defenses. However, based on our interpretation of the statute in *R.G.*, the trial court, not Jim, had a duty to set a hearing on his motion. *See id*. at 121-23. Therefore, the trial court could not have granted Virginia's motion for summary judgment on the ground presented in her motion.

Jim also argues the evidence he submitted in response to Virginia's summary judgment motion created a fact issue as to the existence or the amount of arrearages. In reviewing the summary judgment evidence, we must take as true all evidence favorable to Jim, and we must

indulge every reasonable inference and resolve any doubts in his favor. *See Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. Here, Jim submitted a copy of a 1970 contempt order containing a stipulation as to the amount of arrearages as of December 11, 1970. Jim also submitted an affidavit. Among other things, Jim testified in his affidavit that he remembered making all of the payments required by the December 11, 1970, contempt order. Additionally, Jim testified he made these payments through his attorney's office or directly to Virginia; he did not make these payments through the district attorney's office at the Nueces County Courthouse. Finally, Jim testified that after his child support obligation ended he gave Virginia $850 in cash and a gold chain necklace with a gold medallion worth at least $1,200.00 in settlement of his child support arrears. We agree that the evidence submitted by Jim in response to Virginia's summary judgment motion raised a genuine issue of material fact as to the existence or amount of arrearages.

We, therefore, hold the trial court erred in granting Virginia's first motion for summary judgment.

### C. Jim's Motion for Partial Summary Judgment Based on the Parties' Stipulation

Jim argues the trial court erred in denying his motion for partial summary judgment based on res judicata and collateral estoppel. Jim acknowledges that normally the denial of a motion for summary judgment is not reviewable on appeal; however, he contends that this case fits within an exception to the general rule because the parties filed cross-motions for summary judgment. However, because this case does not involve cross-motions for summary judgment seeking final relief, it is guided by a different principle. *See XTO Energy Inc. v. Smith Production Inc.*, 282 S.W.3d 672, 676 n.3 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd) (recognizing that appellate review of the denial of a partial summary judgment motion was unavailable when the

motion did not seek a final judgment); *Bryceland v. AT&T Corp.*, 114 S.W.3d 552, 555 (Tex. App.—Dallas 2002, pet. granted, judgm't vacated w.r.m.) (same); *Krohn v. Marcus Cable Assoc., L.P.*, 43 S.W.3d 577, 583 (Tex. App.—Waco 2001), *aff'd*, 90 S.W.3d 697 (Tex. 2002) (same); *see also* Timothy Patton, *Summary Judgments in Texas*, § 3.08[4][b] (3rd ed. 2011) ("This principle, that the denial of a cross-motion for summary judgment is reviewable on appeal, should apply only if that cross-motion sought a disposition of all claims in the trial court."). Here, both parties did not present a summary judgment motion seeking a final judgment. Jim's motion only sought summary judgment that as of December 11, 1970, the total amount of child support arrears, including interest, was the sum of $1500.00. We, therefore, cannot review the denial of Jim's motion for partial summary judgment in this appeal.

### D. Virginia's Summary Judgment Motions Challenging Jim's Defenses

Finally, Jim argues the trial court erred in granting Virginia's summary judgment motions challenging his defenses. The defenses raised in Jim's live pleadings were section 157.005(b) of the Texas Family Code, dormancy, laches, res judicata, collateral estoppel, payment, and accord and satisfaction. Jim correctly observes that Virginia's summary judgment motions did not challenge all of the defenses raised by him.

Virginia's second motion for summary judgment, filed on March 30, 2010, argues summary judgment should be granted as to Jim's defenses under section 157.005(b), the dormancy statute, and laches. Virginia's third motion for summary judgment, filed on April 6, 2010, argues summary judgment should be granted as to Jim's defenses under section 157.005(b), the dormancy statute, laches, and res judicata. Both motions state they are motions for no-evidence summary judgment; however, they also contain language indicative of a traditional summary judgment motion. Moreover, with one exception, the motions fail to allege

no-evidence as to one or more element of the challenged defenses as required under established no-evidence summary judgment procedure. *See* TEX. R. CIV. P. 166(a)(i) & cmt. (1997). Rule 166a(i) authorizes a party to move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* TEX. R. CIV. P. 166(a)(i). "[A] no-evidence motion for summary judgment 'must state the elements as to which there is no evidence.'" *Sanchez v. Mulvaney*, 274 S.W.3d 708, 710 (Tex. App.—San Antonio 2008, no pet.) (quoting TEX. R. CIV. P. 166a(i)). When a no-evidence summary judgment motion does not specifically allege which elements lack evidence, the motion is insufficient as a no-evidence summary judgment motion. *Id.*; *Amouri v. Sw. Toyota, Inc.*, 20 S.W.3d 165, 168 (Tex. App.—Texarkana 2000, pet. denied). When an insufficient no-evidence summary judgment motion also contains language indicative of a traditional summary judgment motion, the motion may be treated as a traditional summary judgment motion. *AIG Life Ins. Co. v. Federated Mut. Ins. Co.*, 200 S.W.3d 280, 284 (Tex. App.—Dallas 2006, pet. denied); *Kadhum v. Homecomings Fin. Network, Inc.*, No. 01-05-00705-CV, 2006 WL 1125240, at *4 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Thus, to the extent Virginia's purported no-evidence summary judgment motions fail to allege which elements of Jim's defenses lack evidence, they are insufficient as no-evidence summary judgment motions. However, because these motions also contain language indicative of traditional summary judgment motions, we treat these motions as traditional summary judgment motions. *See AIG Life Ins. Co.*, 200 S.W.3d at 284; *Kadhum*, 2006 WL 1125240, at *4.

## 1. Section 157.005(b) and the Dormancy Statute

Virginia's purported no-evidence summary judgment motions do not challenge a specific element or elements of Jim's Section 157.005(b) and dormancy statute defenses. Thus, we treat

these motions as traditional summary judgment motions. As explained in our earlier discussion of Jim's motion to dismiss, neither section 157.005(b) of the Texas Family Code, nor the dormancy statute, is a defense to the determination of child support arrearages and the issuance of a judicial writ of withholding under Chapter 158 of the Texas Family Code. The trial court properly granted summary judgment as to these defenses.

## 2. Laches

Virginia's purported no-evidence summary judgment motions do not challenge a specific element or elements of Jim's laches defense. Thus, we treat these motions as traditional summary judgment motions. In both her second and third motions for summary judgment, Virginia argued that laches was not available as a defense to Jim's past due child support obligation or to a judicial writ of withholding. The defense of laches is not available when a party is asserting a statutory legal right. *In re M.W.T.*, 12 S.W.3d 598, 604 (Tex. App.—San Antonio 2000, pet. denied). Here, Virginia, who sought relief under Chapter 158 of the Texas Family Code, was enforcing a statutory legal right. Therefore, the affirmative defense of laches was not available to Jim. *See id.*, (concluding the defense of laches was not available in a paternity suit filed under Chapter 160 of the Texas Family Code); *In re Digges*, 981 S.W.2d 445, 447 (Tex. App.—San Antonio 1998, no pet.) (recognizing laches was not an available defense in a proceeding seeking a judicial writ of withholding). The trial court properly granted summary judgment as to Jim's laches defense.

## 3. Res Judicata

Res judicata, or claim preclusion, prevents the relitigation of a claim or a cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in a prior suit. *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519

(Tex. 1984); *In re M.K.R.*, 216 S.W.3d 52, 62 (Tex. App.—Fort Worth 2007, no pet.). Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *M.K.R.*, 216 S.W.3d at 63. Res judicata applies to an agreed judgment and is conclusive on matters actually raised and litigated in the prior action. *Smith v. Huston*, 251 S.W.3d 808, 825 (Tex. App.—Fort Worth 2008, pet. denied); *Jistel v. Tiffany Trail Owners Ass'n, Inc.*, 215 S.W.3d 474, 480 (Tex. App.—Eastland 2006, no pet.).

Virginia's no-evidence summary judgment motion asserts the 1970 contempt order is not evidence that could support Jim's res judicata defense. The motion identifies all the elements of res judicata. It also expressly challenges the first element of Jim's res judicata defense, and can be fairly construed as challenging the third element of Jim's res judicata defense. Specifically, the motion states "there is not a 'prior final judgment on the merits by a court of competent jurisdiction' because prior to January 1, 1974, this remedy did not exist." Thus, as to res judicata, Virginia's summary judgment motion is in fact a no-evidence motion and we treat it as such.

The first element of res judicata involves whether the order in the first action is a final, rather than an interlocutory, order. *See M.K.R.*, 216 S.W.3d at 63-64. Here, there is no question that the 1970 contempt order is a final order. Additionally, there is no question that, even though the remedy of a money judgment for unpaid child support was not available in 1970, the trial court had the authority to determine the amount of arrears owed by Jim.

The third element of res judicata involves whether the second action is based on the same claims as were raised in the first action. *Amstadt*, 919 S.W.2d at 652. For res judicata to apply, a

claim must be in existence at the time the suit is filed. *Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding claims concerning transfer of property and promissory note were not barred by res judicata when transfer of property took place after the first trial and promissory note was not the subject of the first trial). Res judicata does not bar a subsequent suit on a cause of action that was not recognized until after judgment was rendered in the first suit. *Marino v. State Farm Fire & Cas. Ins. Co.*, 787 S.W.2d 948, 949 (Tex. 1990) (holding insured's suit to recover on an insurance policy did not bar a subsequent suit for breach of the duty of good faith when the duty was not recognized at the time of the first suit).

Here, Virginia argues the current case is not affected by the 1970 contempt order because the remedy of a money judgment for unpaid child support did not exist until January 1, 1974. *See Harrison v. Cox*, 524 S.W.2d 387, 390 (Tex. Civ. App.—Fort Worth 1975, writ ref'd n.r.e.) (recognizing that prior to January 1, 1974, the only remedy available for collecting unpaid child support was contempt; "[t]he person to whom such support was payable could not prior to that date sue for and reduce the unpaid child support to judgment."). Nevertheless, whether the remedy of a money judgment for unpaid child support was available at the time the 1970 contempt order was signed has no bearing here. In the 1970 contempt order, the trial court determined, in accordance with the parties' stipulation, the amount of arrears as of December 11, 1970. Thus, the trial court actually addressed the child support payments owed to Virginia in the 1970 contempt order. This is precisely the issue that was before the court in the current case. We, therefore, conclude the trial court erred in granting Virginia's no-evidence summary judgment motion as to Jim's res judicata defense.

Finally, Virginia makes an additional res judicata argument on appeal. Virginia argues the 1970 contempt order is void and unenforceable, and therefore, cannot support Jim's res judicata defense. A summary judgment, however, must stand or fall on the grounds presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). Because this argument was not raised in Virginia's summary judgment motions, we cannot consider it on appeal. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) ("[I]n an appeal from a summary judgment, issues an appellate court may review are those the movant actually presented to the trial court.").

### 4. Collateral Estoppel, Payment, and Accord and Satisfaction

Virginia's summary judgment motions failed to challenge Jim's additional defenses of collateral estoppel, payment, and accord and satisfaction. "A summary judgment cannot be granted on the entirety of an opponent's case unless the motion addresses each cause of action or affirmative defense of the non-movant." Timothy Patton, *Summary Judgments in Texas*, § 3.06[3] (3rd ed. 2011). Because Virginia's summary judgment motions failed to address all of Jim's affirmative defenses, the trial court erred in granting summary judgment as to the entirety of Jim's case.

### CONCLUSION

In sum, the trial court erred in granting summary judgment based on Jim's failure to set a hearing on his motion to stay within thirty days of its filing. Although the trial court properly granted summary judgment as to Jim's defenses based on section 157.005(b), the dormancy statute, and laches, it erred in granting summary judgment as to Jim's defense based on res judicata. Finally, the trial court erred in granting summary judgment as to Jim's remaining defenses because they were not addressed in Virginia's summary judgment motions.

We, therefore, reverse the judgment of the trial court in its entirety, and remand to the trial court for proceedings consistent with this opinion.

Karen Angelini, Justice